**In re ESTATE OF Martha D. GIBSON.**

No. 06–94–00100–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 2, 1995.

Decided Feb. 23, 1995.

Ebb B. Mobley, R.E. Blount, Longview, for appellant.

James T. Womack, Hill, Perry & Sloan, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Angus G. Gibson appeals from a trial court judgment determining that a surviving spouse under a joint will had the authority to dispose of funds as she chose.

Gibson contends: (1) that the trial court erred in concluding that Martha Gibson, as a surviving party to a contractual will, had the authority to dispose of the property in which she received a life estate during her lifetime without restriction, (2) that the trial court erred in concluding that execution of signature cards created valid survivorship rights pursuant to TEX.PROB.CODE ANN. § 439(a), and (3) that the trial court erred in concluding that execution of signature cards created valid survivorship rights pursuant to TEX. PROB.CODE ANN. § 439(b).

Angus B. Gibson and his wife, Martha Gibson, executed a joint will on February 19, 1957. Upon Angus B. Gibson's death, Martha Gibson probated the 1957 will. She then placed funds into nine savings accounts. Martha Gibson died on July 25, 1990. Betty

Rizer, Martha Gibson's daughter, filed an application to probate a second will executed by Martha Gibson on October 14, 1983. Angus G. Gibson filed a contest to the probate of the 1983 will, contending that the 1957 will was a contractual will that should have been admitted into probate. The trial court admitted the 1983 will to probate and refused to admit the 1957 will.

Angus G. Gibson appealed this judgment, and this Court found that the trial court had erred. The opinion reflected that the Court found that the 1957 will was a contractual will creating a life estate for the surviving spouse. *Gibson v. Gibson*, No. 06–92–00054–CV (Tex.App.–Texarkana, 1993, not published). On remand, the trial court voided its previous order admitting the 1983 will to probate and admitted the 1957 will. The trial court then determined that the savings accounts established after Angus B. Gibson's death were not part of the Gibson estate to be inherited under the 1957 joint will and that Martha Gibson had the authority to dispose of this money as she chose. The trial court concluded that the signature cards on each of the accounts created valid rights of survivorship in the surviving parties to the accounts. The trial court then ordered the funds in these savings accounts to pass according to the survivorship agreements, rather than the terms of the original will.

By his first point of error, Gibson contends that the trial court erred in concluding that Martha Gibson, as a surviving party to a contractual will, had the authority to dispose of the property in which she received a life estate. The trial court ruled that Martha Gibson had the authority to dispose of money by placing it in a survivorship account held with other individuals.

■ Conclusions of law are always reviewable. *Westech Engineering v. Clearwater Constructors*, 835 S.W.2d 190, 196 (Tex.App.–Austin 1992, no writ). They will not require reversal unless they are erroneous as a matter of law. *Id.* Incorrect conclusions of law will not require reversal, however, if the controlling findings of fact will support a correct legal theory. *Kotis v. Nowlin Jewelry, Inc.*, 844 S.W.2d 920, 922 (Tex.App.–Houston [14th Dist.] 1992, no writ).

■ In a contractual-joint will, the balance remaining from the estate of the first to die and the estate of the last to die is treated as a single estate and jointly disposed of by both testators in the secondary dispositive provisions of the will. *Fisher v. Capp*, 597 S.W.2d 393 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). The survivor who takes a life estate in the common property of the spouses is estopped to deny the provisions of the instrument and *may not make dispositions inconsistent with it* or defeat the rights of remainder beneficiaries. *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588 (1954). The first issue to be resolved, then, is whether the 1957 will grants to Martha Gibson the unqualified power to dispose of the property during her lifetime.

■ Where the life tenant under a joint and mutual will has an unqualified power to dispose of the property during his or her lifetime, the remainder beneficiaries are effectively relegated to the position of contingent remainder beneficiaries having no justiciable interest in any property except that remaining undisposed of at the life tenant's death. *Dickerson v. Keller*, 521 S.W.2d 288, 292 (Tex.Civ.App.–Texarkana 1975, writ ref'd n.r.e.).

Texas courts have held the power of disposition "to be absolute and unlimited when words such as 'with full power to dispose of' or 'absolutely to dispose of . . . according to her pleasure' or 'as such survivor may desire' or the like are used to create or describe the power, or where language of a conditional fee is used." *Dickerson*, 521 S.W.2d at 291. In *McKamey v. McKamey*, the survivor was given the right to give *inter vivos* gifts. 332 S.W.2d 801 (Tex.Civ.App.–San Antonio 1960, writ ref'd). The wording under such a contract indicated that property was "to be used, occupied, enjoyed, encumbered or *conveyed* and expended, without the joinder of any or our surviving children, . . . and that upon the death of such survivor, any of such estate then remaining, shall be divided among our beloved children." *Id.* (Emphasis added.) Rizer cites *Edds v. Mitchell* for the proposition that a life estate holder can be granted

the power to dispose of the property during the survivor's lifetime. 143 Tex. 307, 184 S.W.2d 823 (1945). In that case, however, as in the others, the will granted the right to "convey." *Id.*

■ In *Dickerson v. Yarbrough,* a will gave only the right to "use, possess, and control." The court found that the will gave no right to sell or dispose of the same. 212 S.W.2d 975, 979 (Tex.Civ.App.–Dallas 1948, no writ). In the case at bar, the will provides that the survivor is to have "all of the rights, title and interest" and "to have and enjoy the use and benefit of said lands and property, including the rents and profits therefrom." No right to convey or dispose was granted in the 1957 will. The trial court erred in concluding that Martha Gibson had the right to dispose of the property that was to pass under the secondary disposition of the 1957 will.

Though Martha Gibson did not have the right to dispose of this property, this is not the end of the issue. Rizer contends that much of Martha's estate was made up of after-acquired-separate property and is, therefore, not subject to the 1957 will. She points to *Jackson v. Stutt,* in which the court could find no authority that by a joint and mutual will a deceased person can control the after-acquired-separate property of the survivor. 737 S.W.2d 597 (Tex.App.–Fort Worth 1987, writ denied). In *Knolle v. Hunt,* decided ten years prior to *Jackson,* the court found that a joint, mutual, and contractual will can control the disposition of the after-acquired property of the survivor, if the intention to do so is set forth in the will by very plain, specific, and unambiguous language. 551 S.W.2d 755 (Tex.Civ.App.–Tyler 1977, writ ref'd n.r.e.).

■ In the case at bar, the will states, "at the death of such survivor the title to all of said lands, estate and personal property, *including both the separate property and estate and the community property of the testator and testatrix herein."* (Emphasis added.) The language "all of said lands, estate and personal property" suggests that this provision refers back to the property owned by the parties, both community and separate, at the time of death of the first testator to die.

Under this interpretation, the devise and bequest would not include property acquired by the survivor after the death of the first testator unless it was traceable to the property that existed at the time of the death of the first testator. On the other hand, this phraseology comes "at the death of such survivor." This could arguably include the after-acquired property held by the survivor at the time of death. This ambiguous language does not qualify as very plain, specific, and unambiguous language as required by the court in *Knolle* as to whether it includes the after-acquired property of the survivor. Martha Gibson, therefore, had the right to dispose of her after-acquired separate property as she chose.

The trial court premised its findings of fact on the erroneous conclusions of law that Martha Gibson had the power and authority to dispose of the property she received in a life estate at the death of Angus B. Gibson, including the rents, revenues, and profits therefrom, and her separate property at the time of the death of Angus B. Gibson in any way that she deemed fit during her lifetime without restrictions. We have determined as a matter of law that the will did not authorize Martha Gibson to make nontestamentary gifts of any of the property so acquired. She would, however, have the right to make nontestamentary gifts of any after-acquired separate property, which would not be subject to the joint will. At this point, the trial court should make a determination as to whether the funds in the survivorship accounts consisted of property traceable to the estate received from Angus Gibson's estate or if these funds are after-acquired property not traceable to the estate. If the funds are traceable to the estate, then they must pass under the joint contractual will and are not subject to the life estate owner's attempted nontestamentary transfers to third parties. If the survivorship accounts consists of after-acquired property not traceable to the estate, then those accounts will be transferred in accordance with the survivorship provision set up in the accounts. This point of error is sustained.

By his second and third points of error, Angus G. Gibson contends that the trial court

erred in concluding that execution of signature cards created valid survivorship rights pursuant to TEX.PROB.CODE ANN. § 439(a), (b)[1] (Vernon Supp.1995).

The Texas Probate Code provides that "sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties." TEX.PROB.CODE ANN. § 439(a). This section also provides for specific-safe-harbor language to create a survivorship agreement. *See id.* These safe-harbor provisions, however, are not the only way to create a right of survivorship. *Stauffer v. Henderson,* 801 S.W.2d 858 (Tex.1990).

In *Chopin v. Interfirst Bank Dallas,* the court found that words such as "held as joint tenants with the right of survivorship" create a right of survivorship. 694 S.W.2d 79 (Tex.App.–Dallas 1985, writ ref'd n.r.e.) The signature cards at issue in this case state that the named account parties "as joint tenants with right of survivorship and not as tenants in common and not as tenants by the entirety" agree that "any funds placed in or added to the account by any one of us is and shall be conclusively intended to be a gift and delivery at that time of such funds to the other tenant signer or signers to the extent of his or their pro rata interest in the account."

The language on the signature card clearly meets the requirements of *Chopin.* Thus, to the extent that it can be shown that the funds contained in these accounts were funds acquired after the death of Angus B. Gibson and not traceable to assets of Angus B. Gibson or Martha Gibson owned at the time of the death of Angus B. Gibson, these funds were properly designated as nontestamentary gifts passing to the joint tenants in the accounts. These points of error are overruled.

The judgment of the trial court is reversed and remanded for a determination as to whether the survivorship accounts consisted of property traceable to the estates owned by Angus B. Gibson or Martha Gibson at the time of Angus B. Gibson's death or consisted of after-acquired property and for a judgment in accordance with this finding.

---

1. Though Gibson lists this point of error in his brief, he lumps the argument with point of error two. He makes no specific argument in support of the third point of error, nor does he cite to any authority specifically pertinent to this issue.