Shirley EVANS, Joyelyn Hoppe Pfluger, Gary Pflughaupt, Gene Pflughaupt, Marie Pflughaupt, and La Verne Hoppe Roberts, Individually and as Independent Co–Executrix with Vivian Hoppe of the Estate of Virgil Hoppe, Deceased, Appellants,

v.

FIRST NATIONAL BANK OF BELLVILLE, Darly Mertins, Individually and as Independent Executrix of the Estate of James Helwig, Deceased, Dottie Helwig, Bardy Helwig, and Otto Knippel as Independent Executor of the Estate of Irene Knippel, Deceased, Appellees.

No. 14–94–00325–CV.

Court of Appeals of Texas, Houston, (14th Dist.).

Feb. 13, 1997.

Rehearing Overruled June 5, 1997.

Ben H. Schleider, Jr., David A. McDougald, Houston, for appellants.

David Harberg, Gary L. Murphree, Sidney Levine, Conrad Day, Daryl L. Moore, Houston, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

In this appeal, we address whether a bank's signature card established that certificates of deposit ("CDs") held in a joint account belong to the survivor of the account parties. Appellants are relatives of Hilda Huber, Deceased ("Hilda"), and beneficiaries under her will who sued to recover funds on deposit at Hilda's death in certain accounts at First National Bank of Bellville ("the Bank"). James Helwig ("James"), Hilda's nephew, was the independent executor of her estate and also a will beneficiary. Appellants claimed James, with the aid of the Bank, wrongfully withdrew and converted these CDs for his own use, thereby breaching his fiduciary duty. The trial court granted partial summary judgments holding that the accounts at issue were owned by James and Hilda as joint tenants with rights of survivorship ("JTWROS"). The remaining issues were tried to a jury, resulting in a take-nothing judgment against appellants and awarding $28,500 in attorney's fees against

Hilda's estate. In this appeal, appellants raise ten points of error. We affirm in part and reverse and remand in part.

## BACKGROUND

On January 17, 1984, Hilda opened a checking account ("the checking account") at the Bank, and executed a signature card in connection with the account. The agreement on the card specified that the account was a joint account with James, and that any money on deposit at the death of either passed to the survivor. Appellants do not challenge the partial summary judgments which were based on the legal conclusion that the checking account was owned as JTWROS.

On May 2, 1986, Hilda opened a time deposit account with an $18,000 deposit, and the Bank issued a certificate of deposit for that amount in Hilda's name.[1] That same day, James and Hilda executed a signature card, entitled "Time Deposit Agreement and Signature Card" ("the time deposit signature card"). The time deposit signature card designated that the account was a joint account styled "Mrs. Hilda Huber," that it covered the original deposit as well as future deposits, that only one signature was required for withdrawal, and provided for joint tenancy with rights of survivorship with James.[2] The signature card did not, however, refer to any CD by number or amount, or specifically provide that it covered all CDs issued in Hilda's name. From 1986 until Hilda's

death, the Bank issued several CDs in Hilda's name. These CDs were renewed periodically, and James endorsed them as they became due.

Hilda died testate, at the age of 90, on December 27, 1989. At the time of her death, Hilda was named as payee on three CDs, as follows:

| | | |
|---|---|---|
| CD # 26332 | $17,000 | (dated 9/1/89); |
| CD # 26347 | $32,900 | (dated 9/15/89); |
| CD # 26435 | $24,500 | (dated 10/27/89). |

Each CD was payable only to Hilda and did not indicate on its face that it was a joint certificate.[3]

The main issue in this appeal is whether these CDs are covered by the time deposit signature card thus vesting James with ownership of the funds as a JTWROS. If these CDs were held as JTWROS, then the funds represented thereby are not part of Hilda's estate because they pass to the survivor as a non-testamentary transfer pursuant to the survivorship terms of the joint account agreement. *See* TEX. PROB.CODE ANN. § § 439(a), 441 (Vernon 1980 & Supp.1997); *Sheffield v. Estate of Dozier*, 643 S.W.2d 197, 198 (Tex.App.—El Paso 1982, writ ref'd n.r.e.).

James was appointed independent executor of Hilda's estate and the court issued letters testamentary on January 22, 1990. These letters were furnished to the Bank the same day. On February 22, 1990, James filed a sworn inventory of the estate and

---

1. The record indicates a time deposit account is one into which funds are deposited for a specified period of time, and that certificates of deposit were the only type of time deposit at the Bank.

2. In a paragraph designated "Joint Accounts," the time deposit signature card specifically provides, in relevant part, as follows:

   The signator(s) of *this account* hereby acknowledge that the depositor or depositors, both as to the original deposit and any subsequent deposits, intend that such funds as may constitute any account balance upon the death of any party to *this account*, shall be the property of the surviving party or parties who shall take as a surviving joint tenant.

   \* \* \* \* \* \*

   The signators hereto agree that the funds held in *this account* shall be held subject to the joint tenancy with right of survivorship agreement contained herein. (emphasis added).

The signatures of both Hilda and James appear immediately below these terms.

3. On the back of each certificate was the following:

   JOINT CERTIFICATES: When two or more persons are named as depositors on this Certificate with the conjunction "or" appearing between names, then such Certificate shall be payable to any or the survivor or survivors of them and payment may be made upon surrender of this Certificate to any of them during the lifetime of all, or to any survivor or survivors after the death of one or more of them. When the conjunction "and" appears between names, the Certificate shall be payable only upon the signatures of all depositors named. Notice of amendment or repeal may be sent as hereinafter provided.

   As noted, the certificates named only Hilda. Therefore, these instructions for payment are inapplicable here.

listed the three CDs at issue as estate assets. Indeed, CD # 26347, in the amount of $32,-900, matured on March 16, 1990 and was renewed into a new CD in the name of the Estate of Hilda Huber.[4]

On April 30, 1990, James withdrew the funds represented by all three CDs without endorsing them. The Bank issued three new CDs payable to James, his wife, Dottie Helwig ("Dottie"), his daughter, Darly Helwig Mertins ("Darly"), or his son, Bardy Helwig ("Bardy"). James cashed these CDs on October 30, 1990, and deposited the funds in his checking account.

Appellants first questioned James's handling of Hilda's estate in April 1991, and in June they served James with a demand for an accounting of the estate. After a second request, James furnished an accounting dated October 16, 1991, to which appellants objected because it did not include the CDs. On November 8, 1991, appellants sued James, seeking an accounting, a money judgment for sums they claimed were converted, James's removal as independent executor of Hilda's estate, and the denial of any attorney's fees or commissions incurred by James.[5] Appellants added the Bank and James's daughter, Darly, a bank employee since 1971 and a cashier during the events at issue, as defendants, alleging the Bank and Darly aided James in unlawfully acquiring the funds on deposit. Shortly before trial, appellants added claims against James's wife, Dottie, and son, Bardy, alleging they also aided James in converting the funds. James died shortly before trial, and his daughter, Darly, was named executrix of his estate. George Reinicke was named successor independent executor of Hilda's estate. Darly, as independent executrix of James's estate, filed a third party claim against George Reinicke as successor executor, for reimbursement from Hilda's estate for expenses associated with James's

defense of appellants' action to remove him as executor.

After the trial court entered partial summary judgments absolving the Bank, Dottie, Bardy and Darly, in her individual capacity, of liability and ruling that James and Hilda owned the CDs as JTWROS, the remaining issues proceeded to trial against Darly as independent executrix of her father's estate. At the conclusion of the evidence, the court directed a verdict in favor of Darly as independent executrix on all issues except whether James failed to properly identify estate assets. Thus, the jury considered only the issues of whether James properly identified estate assets and whether he acted in good faith in defending the plaintiffs' action to remove him as executor. The jury found that James acted in good faith, fully disclosed the nature of the estate assets, awarded no damages to plaintiffs, and awarded $57,000 in attorney's fees for James's expenses related to defending the removal action. Darly as executrix consented to a remittitur, and the trial court entered judgment for $28,500, to be paid from Hilda's estate. In addition, the court awarded $1,000 in attorney's fees to Conrad Day, attorney for involuntary plaintiff, Otto Knippel, independent executor of the estate of Irene Helwig Knippel.

## CROSS–POINT

Initially, we address the cross-point raised by co-appellees, Darly as independent executrix, Dottie and Bardy ("the Helwigs"), which alleges that appellants lack standing to bring this appeal.

First, the Helwigs assert appellants lack standing because they were not parties to Darly's third party action against Reinicke as executor of Hilda's estate. Not only was the third party claim brought against Reinicke, who was served and answered, but judgment

---

4. Pursuant to Section 252 of the Probate Code, the representative of the estate shall attach to the inventory of the estate an affidavit that the inventory is "a true and complete statement of the property ... of the estate that [has] come to his knowledge." James submitted a proper affidavit with the February 22, 1990 inventory.

5. Irene Helwig Knippel, James's sister and another beneficiary of Hilda's will, was named as

an involuntary plaintiff. Irene died before trial, and after her death, Otto Knippel ("Otto"), her husband and the executor of her estate, appeared in her place. Appellants also sued Marion Robert Goodwin, James's former attorney, but nonsuited him before trial. Sometime after trial, Virgil Hoppe died and his co-executors are now parties to the appeal.

for attorney's fees was entered against Reinicke in his capacity as independent executor of Hilda's estate. Yet Reinicke is not a party to the appeal. Therefore, the Helwigs argue appellants have no standing to contest the award of attorney's fees.

■ It is a fundamental principle of appellate review that a party on appeal may not complain of errors that do not injuriously affect him. *Buckholts I.S.D. v. Glaser,* 632 S.W.2d 146, 150 (Tex.1982). The right to appeal rests only in an aggrieved party to a lawsuit. *County of El Paso v. Ortega,* 847 S.W.2d 436, 442 (Tex.App.—El Paso 1993, no writ) (citing *Southern Nat'l Bank of Houston v. City of Austin,* 582 S.W.2d 229, 235 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.)). An aggrieved party is one who has an interest recognized by law which is injuriously affected by the trial court's judgment. *Id.* Here, we find that appellants, as beneficiaries under Hilda's will, are aggrieved parties entitled to appeal an award of attorney's fees to be paid from the estate.

The Helwigs also argue that any suit by or against an estate must be brought in the name of its legal representative. *See Estate of C.M. v. S.G.,* 937 S.W.2d 8, 10 (Tex.App.— Houston [14th Dist.], 1996, n.w.h.) (citing *Price v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex.1975)). Appellants sued in their individual names in this case, instead of bringing the estate's claim through the executor of the estate.

■ While the Helwigs correctly assert the general rule, it is inapplicable to the facts at issue here. Appellants first brought suit against James while he was acting as the original executor of Hilda's estate. Appellants alleged James breached his fiduciary duty and sought to remove him. Appellants have standing, as "interested persons," to bring a claim against the executor of the estate in their individual names.[6] The Probate Code specifically provides for suits by "any interested person" to remove personal representatives for misapplication of estate

funds. *See* Tex. Prob.Code Ann. §§ 222(b)(1), 149C(a)(2) (Vernon Supp.1997). It is illogical to argue that appellants are required to assert their claim against James for wrongdoing in a suit styled "James Helwig, Independent Executor of the Estate of Hilda Huber v. James Helwig."

■ After James's death, a successor executor, George Reinicke, was appointed. At that time, appellants could have amended their pleadings to bring their action in the name of the new executor. We note that when a successor representative is named, he *"may* make himself, and *may* be made, a party to suits prosecuted by or against his predecessors." Tex. Prob.Code Ann. § 225 (Vernon 1980) (emphasis supplied). This provision indicates the substitution of the successor executor as a party is permissive rather than mandatory, and the failure to so amend does not render appellants' pleadings defective.

We conclude that appellants have standing to prosecute this appeal and overrule the Helwigs' cross-point.

## SUMMARY JUDGMENTS

In point of error one, appellants argue the trial court erred in entering summary judgment that James had rights of survivorship in the CDs. In point two, they argue conversely that the court erred in granting partial summary judgments denying that these CDs were estate assets.[7] To resolve these points, we must analyze the grounds raised in each motion and response.

The standard of review for summary judgments is well established. The applicable rules are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

---

6. Probate Code section 3(r) defines "interested persons" or "persons interested" as meaning "heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered."

7. The partial summary judgments entered in this cause were later incorporated in one final judgment. For clarity, this opinion discusses each partial summary judgment.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To prevail, a defendant moving for summary judgment must "establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

### Summary Judgments in Favor of James and the Helwigs

■ Initially, we address appellants' complaint that summary judgment was improper because James died shortly before the court granted summary judgment in his favor, and his executor had not yet been named. If the trial court erred in granting judgment after James's death, any impropriety was removed when Darly later appeared as executrix of James's estate and moved for another summary judgment, which the trial court granted.

■ James, joined by Otto, moved for summary judgment solely on the ground that James and Hilda held the CDs as JTWROS. The partial summary judgment in favor of James specifically ruled that James and Hilda owned the CDs as JTWROS. When reviewing a summary judgment, we should consider all summary judgment grounds the trial court ruled on and the movant preserves for appellate review that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). In this case, the trial court ruled *only* on the issue of ownership of the CDs as JTWROS.

Section 439 of the Probate Code provides the exclusive means for creating a right of survivorship in joint accounts. *Stauffer v. Henderson,* 801 S.W.2d 858, 862 (Tex.1990). Specifically, subsection (a) provides in relevant part:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. Notwithstanding any other law, an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substantially the following form: "On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate." A survivorship agreement will not be inferred from the mere fact that the account is a joint account.

TEX. PROB.CODE ANN. § 439(a) (Vernon Supp. 1997).

■ Thus, the legislature has determined a written agreement signed by the decedent is required to prove a right of survivorship in a joint account. *Stauffer,* 801 S.W.2d at 863. This agreement is determinative of the existence of a right of survivorship in a joint account. *Id.* Extrinsic evidence of a party's intent is inadmissible to contradict, add to, or vary the terms of an unambiguous agreement. *Id; see also Stegall v. Oadra,* 868 S.W.2d 290, 294 (Tex. 1993).

■ For an account to comply with the requirements of section 439(a), there must be a written agreement signed by the decedent, and the agreement must provide that upon the death of any party, the interest of the deceased *survives* to the other party. *Dickerson v. Brooks,* 727 S.W.2d 652, 653 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Chopin v. Interfirst Bank Dallas, N.A.,* 694 S.W.2d 79, 83 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Language to the effect that "the account is held as joint tenants with rights of survivorship" is sufficient to create a valid survivorship agreement. *Chopin,* 694 S.W.2d at 84.

■ Appellants first argue we may not consider the time deposit signature card, but

instead must look only to the terms of the certificates themselves. They argue the signature card constitutes extrinsic evidence that may not be considered. We disagree. "Any agreement signed by the depositor may be considered under section 439(a)." *Stauffer*, 801 S.W.2d at 865 n. 6. In *Dickerson*, the court of appeals found that the fact the bank failed to note on the certificates of deposit that the accounts were joint accounts with rights of survivorship was irrelevant in the face of express, unambiguous language on the signature card. *Dickerson*, 727 S.W.2d at 653–54. The decedent's failure to sign the certificates was also irrelevant in *Dickerson* because the requirements of section 439(a) were met by the execution of the signature card. *Id.* at 654.

■ In this case, the time deposit signature card provides that the time account is a joint account in the name of "Mrs. Hilda Huber." The card specifies that the account is subject to a joint tenancy with right of survivorship agreement and that the parties intend that the funds on deposit at the death of either party "shall be the property of the surviving party or parties who shall take as a surviving joint tenant." *See supra* note 2. The time deposit signature card language providing that "such funds as may constitute an account balance upon the death of any party to the account shall be the property of the surviving party" incorporates the "vest" and "belong to" concepts in the legislatively drafted safe harbor provision in section 439(a). In addition, the card language meets the "made to survive" standard in that section inasmuch as it directs that the survivor "shall take" the funds remaining on deposit. Therefore, the signature card, on its face, is a sufficient agreement to create JTWROS as to the time deposit account in the name of Mrs. Hilda Huber.

The card does not clearly demonstrate survivorship intent over the three CDs at issue, however, or that these CDs are part of the time deposit account. The time deposit signature card lists no CD numbers, and the

boxes indicating the type of certificate, its term, and information concerning interest payments are not marked. The signature card does not recite that it covers all CDs in the name of Hilda Huber, and the CDs make no reference to the signature card. *Cf. McNeme v. Estate of Hart*, 860 S.W.2d 536 (Tex.App.—El Paso 1993, no writ) (holding that an unsigned depository agreement providing for survivorship that is incorporated by reference into a signature card containing an initialled statement indicating survivorship is sufficient to make the account a survivorship account). The funds represented by the CDs are not clearly identifiable as being subject to the time deposit signature card. *Cf. Dickerson*, 727 S.W.2d at 653–54 (holding saving certificates held in a joint account belonged to the survivor of the account parties where the signature card referenced the certificate numbers). Thus, the signature card, standing alone, is insufficient to identify which CDs in the name of Hilda Huber were covered by the agreement.[8] Moreover, the signature card refers to a singular account. *See supra* note 2. Appellees take the position that there is one "time account," and all CDs in the name of Hilda Huber are a part of it. However, this view is inconsistent with the definition of "account" in the probate code chapter covering nontestamentary transfers of multiple-party accounts. Section 436(1) provides in relevant part that:

> "Account" means a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account, and other like arrangement.

TEX. PROB.CODE ANN. § 436(1) (Vernon 1980). By reference to a singular certificate of deposit, the probate code considers that each certificate constitutes an account for which parties to a multiple-party account may create a survivorship agreement. *Cf. Ivey v. Steele*, 857 S.W.2d 749 (Tex.App.—Houston [14th Dist.] 1993, no writ) (where each CD was treated as a separate account with a

---

8. In contrast, the checking account, also in the name of "Mrs. Hilda Huber," was assigned an account number enabling deposits to that account to be identified by that number. The

checking account's signature card, which contained the survivorship agreement, referred to the account number, thus making Hilda's demand deposit account a JTWROS account.

separate signature card indicating the survivorship nature of the account). We hold the time deposit signature card is ambiguous.

An ambiguity in a contract may be described as "patent" or "latent." A patent ambiguity is evident on the face of the contract. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.* Here, while the time deposit signature card appears unambiguous on its face, when we attempt to apply its language to three different CDs, a latent ambiguity arises.[9]

Because we hold that the time deposit signature card is ambiguous in application, we must determine whether evidence to explain this ambiguity is permissible.[10] Ordinarily, if a latent ambiguity arises when applying the subject matter to the contract with which it deals, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. *National Union*, 907 S.W.2d at 520. In *Stauffer*, the Texas Supreme Court explained that with regard to the existence of a right of survivorship, *"[i]f [a joint account] agreement is complete and unambiguous, then parol evidence is inadmissible, as with written agreements generally, to vary, add to or contradict its terms."* 801 S.W.2d at 863 (citing *Hubacek v. Ennis State Bank,* 159 Tex. 166, 170, 317 S.W.2d 30, 32 (1958)) (emphasis supplied). "[I]f the terms of an agreement pertaining to a joint account are clear, the parties may not introduce extrinsic evidence of the parties' intent." *Id.* at 864. Thus, we are constrained to follow the *Stauffer* mandate that extrinsic evidence may not be utilized to prove the intent of the parties with respect to the creation of a JTWROS account.

However, the Texas Supreme Court did not address in *Stauffer* the reciprocal question of whether extrinsic evidence may be introduced when the joint account agreement is ambiguous. *See* Robert N. Virden, *The Final(?) Word on Joint Tenancy with Right of Survivorship Accounts,* 55 TEX. B.J. 24, 26 (1992). We determine, based upon the careful wording of the *Stauffer* opinion, that agreements relating to joint accounts are to be interpreted according to contract rules generally. Where no ambiguity exists, parol evidence is improper. Extrinsic evidence is permissible, however, to explain an ambiguity where the signature card or other agreement is unclear as to some aspect of the parties' agreement, other than their intent to create a survivorship account. In this case, Hilda's intent to create a survivorship account is clear. We hold that extrinsic evidence may be considered, however, to determine which CDs are subject to the survivorship agreement. *But see Shaw v. Shaw,* 835 S.W.2d 232, 234 (Tex. App.—Waco 1992, writ denied) (holding that a determination of ambiguity is not permitted under section 439(a) because the statute abrogates basic contract principles and controls the interpretation of survivorship agreements); *Kitchen v. Sawyer,* 814 S.W.2d 798, 801 (Tex.App.—Dallas 1991, writ denied) (holding that extrinsic evidence from bank officer that all the bank's joint accounts were required to be JTWROS could not be used to prove intent where signature card did not have box for JTWROS marked). Our holding in this case is limited to circumstances such as these where a party has expressed a clear intent to create a survivorship account, but additional evidence is required to determine what funds are properly subject to the survivorship agreement. *See, e.g., In re Estate of Gibson,* 893 S.W.2d 749, 753 (Tex. App.—Texarkana 1995, no writ) (holding that a signature card created a survivorship account and remanding for a determination of which funds in the account were after-acquired separate property not subject to a

---

**9.** The Texas Supreme Court in *National Union* cited for example, "if a contract called for goods to be delivered to 'the green house on Pecan Street,' and there were in fact two green houses on the street, it would be latently ambiguous." 907 S.W.2d at 520 n. 4.

**10.** A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Sage Street Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex.1993).

joint will and could pass by nontestamentary transfer to joint tenants); *see also Stegall,* 868 S.W.2d at 294 (holding that extrinsic evidence to establish the relative capacity of the parties to a trust account was permissible when the *nature* of the account was not at issue).

Keeping in mind that James moved for summary judgment solely on the ground that James and Hilda held the CDs as JTWROS, we review James's summary judgment proof to determine if he established this ground as a matter of law. James argued that he need not rely on any parol evidence to connect the time deposit signature card to the CDs to establish he owned the CDs as a surviving joint tenant. The only proof attached to James's second motion consisted of authenticated copies of the time deposit signature card, the CDs, and Hilda's will and order admitting it to probate. He argued that the signature card clearly established JTWROS. James's motion stated that "the Time Agreement [signature card] explicitly states that it applies to all time deposits at the Bank in the name of Hilda Huber." After a careful review of the time deposit signature card, we find no such explicit statement.

Appellees argue that because the time deposit signature card refers to no particular CD, it covers them all. It is also possible that the signature card covers only the CD that was purchased the same day the card was executed. The reference in the terms of the signature card to "subsequent deposits" could mean increases in the original CD due to interest accrual, rather than the purchase of new CDs. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). When a contract contains an ambiguity, summary judgment is improper because interpretation of the instrument becomes a fact question. *Id.* at 394.

The summary judgment proof in this case does not resolve this fact question. Attached to James's first motion for summary judgment were affidavits by Bank employees, together with excerpts from their depositions, asserting the time deposit signature

card covered all CDs issued to Hilda. They testified that because the signature card had no information as to any specific CD, it applied to all CDs in Hilda's name. They also testified that CDs are the only type of time accounts available at the Bank.

Even though this proof was not incorporated in James's second motion, we have held that proof attached to earlier summary judgment motions can be properly before the trial court. *See Vaughn v. Burroughs Corp.,* 705 S.W.2d 246, 248 (Tex. App.—Houston [14th Dist.] 1986, no writ); *see also McCurry v. Aetna Cas. and Sur. Co.,* 742 S.W.2d 863, 867 (Tex.App.—Corpus Christi 1987, writ denied) (stating that trial court may judicially notice documents in the record as summary judgment proof). Moreover, the Texas Supreme Court has held that the only requirement for summary judgment proof was that it "be on file, either independently or as part of the motion for summary judgment, the reply thereto, or some other properly filed instrument." *Richards v. Allen,* 402 S.W.2d 158, 161 (Tex.1966); *but see Nicholson v. Naficy,* 747 S.W.2d 3, 4–5 n. 1 (Tex.App.—Houston [1st Dist.] 1987, no writ) (noting deposition page not referenced in motion or response cannot be used to support summary judgment).

[22] However, we cannot consider evidence supporting the movant unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965); *Clark v. South Loop Nat'l Bank,* 740 S.W.2d 471, 472 (Tex. App.—Houston [1st Dist.] 1987, no writ). Appellants responded to James's motions, denying that the CDs were held as JTWROS, and contending numerous fact questions existed. Appellants asserted James acknowledged that the three CDs at issue were estate assets when he listed them in his sworn inventory. They argued that because James listed the three CDs as assets of Hilda's estate on the inventory he filed in February 1990, a fact question exists as to the true nature of the CDs and summary judgment was improper. In addition, they pointed out that after Hilda's death, one of the CDs was rolled over into a CD in the

name of the Estate of Hilda Huber. Authenticated copies of both the inventory and this Estate CD were attached to appellants' response to James's motion for partial summary judgment.

■ Thus, appellants provided some controverting proof that the CDs were estate assets. Evidence favorable to the non-movants must be taken as true, with all reasonable inferences indulged in their favor. *Nixon*, 690 S.W.2d at 548–49. We reiterate the clear holding of the *Coker* majority that where, as here, a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394. We hold that a material fact question exists as to whether the CDs are covered by the signature card. We therefore conclude that summary judgment for James and Otto was improper.[11]

When Darly moved for summary judgment as executrix of her father's estate, she incorporated the grounds and proof in James's motion entirely. Therefore, the judgment granted in her favor was in error for the reasons just discussed. Dottie and Bardy moved for summary judgment based on the court's finding that James held the CDs as JTWROS. They attached no summary judgment proof to their motion, but by subsequent motion asked the court to incorporate the summary judgment proof attached to James's and Otto's motion for summary judgment. However, several factual assertions made by Dottie and Bardy remained without evidentiary support. They denied making any representations or breaching any duties to the plaintiffs. These assertions, made only in their motion or reply to appellants' response, cannot support summary judgment in the absence of affidavits or other summary judgment proof. We conclude that summary judgment in favor of Dottie and Bardy was also in error.

We sustain appellants' first and second points of error as to the partial summary judgments in favor of James, Otto, Darly as Executrix, Dottie and Bardy.

## Summary Judgments in Favor of the Bank and Darly, Individually

■ As with James, the Bank's first motion for summary judgment was granted only as to the checking account. The Bank's second motion for summary judgment raised the following grounds: (1) the Bank was authorized to pay the time account to James without regard to ownership because he held letters testamentary; (2) the Bank had no notice of appellants' claimed interest until long after James had withdrawn the funds; and (3) the Bank did not breach any duty owed to Hilda. The court's order did not specify the ground on which the ruling was based. It is well established that when a trial court's order granting summary judgment does not specify the ground relied upon for its ruling, judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

■ The summary judgment in favor of the Bank must be upheld because appellants have not attacked each ground upon which the judgment may have been granted. *See Fields v. City of Texas City*, 864 S.W.2d 66, 68 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Only appellants' points one and two present any grounds for overturning the summary judgment in favor of the Bank. As discussed, these points only challenge the trial court's rulings that James had rights of survivorship in Hilda's CDs and that the CDs were not assets of the estate. Appellants have not assigned error attacking the grounds asserted in the Bank's motion. We may not reverse a trial court's judgment in the absence of properly assigned error. *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990); *see* Tex.R.App. P. 74(d).[12]

11. *Cf. Davis v. Shanks*, 898 S.W.2d 285 (Tex. 1995) (holding that because the term "contents" in a will conveyed more than one meaning, the trial court improperly granted summary judgment and should have considered extrinsic evidence of the testator's intent to determine the meaning of the term as used in the will).

12. Appellants did not assert a general point of error complaining simply that the trial court erred in granting the motion for summary judgment, which would have been sufficient to comply with the briefing rules and permit argument as to all grounds upon which summary judgment should have been denied. *See Malooly Bros.,*

Appellants limit their argument on appeal to the issue of whether the Bank was required to obtain James's endorsement on the last three CDs in Hilda's name, as well as the CD payable to Hilda's Estate, before permitting him to withdraw the funds on deposit. The endorsement issue was not raised or presented to the trial court in response to the Bank's motion for summary judgment. The non-movants must expressly present to the trial court in a written response any grounds defeating the movant's entitlement to judgment. *McConnell v. Southside ISD,* 858 S.W.2d 337, 343 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). Consequently, appellants waived their complaint as to lack of endorsement.

Therefore, for these reasons, we must overrule appellants' challenge to the partial summary judgment in favor of the Bank.

In Darly's motion for summary judgment, she relied on the fact that the Bank had already been granted summary judgment. She argued, therefore, that appellants had no cause of action against her based on her employment at the Bank. Her motion was based on the following grounds: (1) the CDs were owned as JTWROS; (2) even if survivorship rights were not effectively created, the account was still a joint account properly payable to James; (3) the account was properly payable to James because he held letters testamentary; (4) Darly had no notice of appellants' claims until long after James withdrew the funds; (5) Darly did not conspire with, aid or abet James; and (6) Darly breached no duty owed to Hilda, her estate or appellants.

When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, as here, appellants must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 381 (Tex.1993) (plurality opinion). Appellants have not negated all Darly's grounds. Therefore we must overrule appel-

lants' complaints as to the summary judgment granted in favor of Darly, individually.

In conclusion, appellants' points of error one and two are sustained as to the partial summary judgments in favor of James, Otto, and the Helwigs. We overrule these points as to the partial summary judgments in favor of the Bank and Darly individually.

## Appellants' Motion for Summary Judgment

In point of error three, appellants contend the court erred in failing to grant their motion for summary judgment. Ordinarily, a party may not appeal an order denying summary judgment. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). An exception applies when both parties move for summary judgment, and the court grants one and overrules the other. *Id.*

Appellants have not preserved their complaint about the denial of their motion for summary judgment. There is no order in the record before us denying their motion. TEX.R.APP. P. 52(a). There is nothing in the record indicating the motion was ever presented to or ruled on by the court. A point of error based on the trial court's ruling on a motion of any kind must be supported by a showing in the record that the motion was presented to and acted upon by the trial court. *Ballard v. King,* 652 S.W.2d 767, 769 (Tex.1983). Moreover, appellants have not properly presented this complaint for our review. They argued only that fact questions precluded the summary judgments granted in favor of appellees and made no separate argument supporting the granting of their motion. *See* TEX.R.APP. P. 74(f); *Emery v. Rollins,* 880 S.W.2d 237, 238 (Tex. App.—Houston [14th Dist.] 1994, writ denied). We must overrule appellants' third point of error.

## JURY TRIAL

Appellants argue points of error four, five and six jointly. In point of error four, appellants contend the trial court erred in failing

*Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Davis v. Pletcher,* 727 S.W.2d 29, 32 (Tex.App.—

San Antonio 1987, writ ref'd n.r.e.).

to hold that James breached fiduciary duties owed to Hilda, her estate or appellants. In point five, they assert that the court erred in directing a verdict against them at trial. Although appellants assert in point six that the trial court erred in failing to direct a verdict or to grant a judgment n.o.v. in their favor, their arguments on appeal are confined to their claim against James for breach of fiduciary duty to Hilda and her estate.[13]

At the conclusion of appellants' evidence, the court directed a verdict in favor of Darly, as independent executrix of James's estate, on all issues other than appellants' claim that James failed to properly identify estate assets. (The jury answered this question negatively, and appellants do not contest the jury's failure to find on appeal.) The only other issue submitted to the jury was defensive in nature, that is, whether James acted in good faith, entitling him to be reimbursed by the estate for his attorney's fees in defending the removal action.

In reviewing the granting of a directed verdict by the trial court, we will "determine whether there is any evidence of probative force to raise fact issues on the material questions presented." *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). We consider all of the evidence in the light most favorable to appellants, the parties against whom the verdict was directed, and disregard all contrary evidence and inferences. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). If there is any conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and we must reverse and remand for the jury's determination on the issue. *Id.*

Appellants argue James was Hilda's fiduciary, and if the funds represented by the CDs were transferred to James through survivorship accounts, they were "gifts." Therefore, they contend James had the burden to overcome the presumption that gifts from the principal to the fiduciary are unfair and invalid. *See Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980).

■ A fiduciary duty is an extraordinary one that arises when a party is under a duty to act for, or give advice for, the benefit of another. *Id.* at 507. The term "fiduciary" includes those informal relations that exist when one party trusts and relies upon another. *Id.* The relationship of aunt and nephew, together with the nephew's help in handling the aunt's financial affairs, does not necessarily establish a fiduciary relationship. *Id.* at 508. However, where trust is reposed and substantial benefits are gained, equity recognizes that the beneficiary in such transactions is a fiduciary and under an obligation to establish the fairness of the transactions. *Id.* at 508–09.

■ The executor of an estate is held to the same high fiduciary duties and standards in the administration of a decedent's estate as are applicable to trustees. *Humane Soc'y of Austin and Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976); *Ertel v. O'Brien*, 852 S.W.2d 17, 20 (Tex.App.—Waco 1993, writ denied). The executor has a duty to protect the interests of the estate and not to permit his personal interest to conflict with that duty. *Id.*

■ Whether James breached his fiduciary duty is dependent, in large part, on the resolution of the ownership of the CDs. As the Helwigs' counsel stated at trial, appellants "entire claim for breach of fiduciary duty revolves around those certificates of deposit." Because the trial court granted summary judgment that the CDs were held as JTWROS, appellants were unable to fully develop the issue of James's conduct at trial. The court's ruling forestalled much of the evidence appellants attempted to offer. In addition, to the extent the court's directed

13. Appellants make no separate arguments that the trial court should have granted a judgment n.o.v. or that James owed a fiduciary duty to them. In the absence of argument and authority, error is waived. TEX.R.APP. P. 74(f); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Therefore, we do not address any duty James may owe to appellants apart from a fiduciary duty owed to Hilda's estate. Our discussion, like that of appellants, is limited to breach of fiduciary duties James may have owed to Hilda or her estate.

verdict was based on its earlier summary judgment rulings that James was entitled to the CDs as a matter of law, it was in error. Whether James breached his fiduciary duty was not established as a matter of law. Therefore, the trial court erred in directing a verdict against appellants on their breach of fiduciary duty claims, and we sustain point of error five. For the same reason, we must overrule points of error four and six, in which appellants contend James's breach was established as a matter of law.

■ In point of error seven, appellants argue that as a matter of law, James did not act in good faith in defending the action to remove him as independent executor of Hilda's estate. The Texas Probate Code provides that:

> An independent executor who defends an action for his removal in good faith, whether successful or not, shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings.

TEX. PROB.CODE ANN. § 149C(c) (Vernon 1980). In answer to question one, the jury found James defended the action in good faith. We recognize that an executor need not prevail in a removal action in order to be found to have acted in good faith in defending the action. *See, e.g., Garcia v. Garcia,* 878 S.W.2d 678 (Tex.App.—Corpus Christi 1994, no writ). However, because the issue of good faith is intertwined with the other issues in this case, we find that justice requires reconsideration of this issue on remand.

When error requires reversal as to part of the judgment, we may order a new trial as to that part only if the matter is clearly separable without unfairness to the parties. TEX. R.APP. P. 81(b)(1). In this case, the determination of which CDs are subject to the JTWROS agreement in the signature card is the threshold issue from which any liability against the Helwigs flows. *See, e.g., Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 137 (Tex.App.—Corpus Christi 1987, no writ) (remanding entire case when parties' causes of action arose from same event that was the "focal point" of the suit); *Valley Internat'l Properties, Inc. v. Brownsville Sav. and*

*Loan Ass'n,* 581 S.W.2d 222, 226 (Tex.Civ. App.—Corpus Christi 1979, no writ) (reversing entire judgment as to one party where claims involved the same facts and issues and were so interwoven as to make it impractical to try the case piecemeal); *Austin Shoe Stores v. Elizabeth Co.,* 538 S.W.2d 677, 681 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e) (remanding entire cause for trial in the interests of justice after summary judgment was found erroneous). Therefore, we conclude that in the interest of justice, appellants' other claims against the Helwigs must also be remanded for trial. In view of this disposition we need not address appellants' claims in points eight and nine as to the propriety of the attorney's fees awarded.

■ As a final matter, we consider appellants' tenth point of error. Appellants complain the trial court erred in empaneling only six jurors when they had requested twelve.

This case was tried in a county court, not a district court. Juries in county courts are composed of six persons. TEX. CONST. art. 5, § 17; TEX. GOV'T CODE ANN. § 62.301 (Vernon Supp.1997). The provisions governing Austin County Court at Law are found at TEX. GOV'T CODE ANN. § 25.0102 (Vernon 1988 & Supp.1997). In relevant part, the statute provides: "If a family law case or proceeding is tried before a jury, the jury shall be composed of 12 members; in all other cases the jury shall be composed of six members." TEX. GOV'T CODE ANN. § 25.0102(h) (Vernon 1988). The trial court properly denied appellants' request for a twelve-person jury.

Appellants complain that a six-person jury deprived them of equal protection and due process of law. A similar argument has been considered and rejected in *Rutledge v. Rutledge,* 720 S.W.2d 633 (Tex.App.—Fort Worth 1986, no writ), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (statute requiring six-person jury in a divorce action in county court at law does not violate state constitution). We likewise find no constitutional violation resulting from a six-person jury in this case and overrule point of error ten.

## CONCLUSION

We have determined the partial summary judgments in favor of James, Otto, Darly as Executrix, and Dottie and Bardy Helwig were in error. Appellants failed, however, to demonstrate the judgments in favor of the Bank and Darly in her capacity as a bank employee were in error. These partial summary judgments, even though later incorporated in one final judgment, are clearly separable from the claims against James and the Helwigs. *See* TEX.R.APP. P. 81(b)(1).

In conclusion, we affirm the trial court's partial summary judgments, incorporated in the final judgment, in favor of the Bank and Darly, individually. In addition, all partial summary judgments as to the checking account, also incorporated in the final judgment, are affirmed. We reverse the remainder of the final judgment entered by the trial court and remand for a new trial consistent with this opinion.