Affirmed in Part; Reversed and Rendered in Part; and Opinion filed
August 14, 2007








Affirmed in Part; Reversed and Rendered in Part; and
Opinion filed August 14, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00474-CV

_______________

 

                                HARRY HOLMES II,
INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE 

ESTATE OF THOMAS J. HOLMES, DECEASED, AND AS 

TRUSTEE OF ANY TRUST NAMED AS A LEGATEE IN THE 

WILL OF THOMAS J. HOLMES, SR., DECEASED, Appellant

 

V.

 

DOUGLAS G. BEATTY, INDIVIDUALLY AND AS INDEPENDENT
EXECUTOR OF THE ESTATE OF KATHRYN V. HOLMES, DECEASED, Appellee

                                                                                                                    
                           

On Appeal from the Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 308,541‑403

                                                                   
                                                                            

 

O P I N I O N








In this
appeal, and in companion case number 14-03-00663-CV, we must address several
issues of first impression and determine whether Thomas J. Holmes, Sr. and
Kathryn V. Holmes, a husband and wife, both deceased, owned certain brokerage
accounts and securities held in certificate form with a right of survivorship. 
In this case, appellant, Harry Holmes, II, Individually and as Independent
Executor of the Estate of Thomas J. Holmes, Deceased, and As Trustee of Any
Trust Named as a Legatee in the Will of Thomas J, Holmes, Sr., Deceased (AHolmes@), and appellee, Douglas G. Beatty,
Individually and as Independent Executor of the Estate of Kathryn V. Holmes,
Deceased (ABeatty@), filed cross-motions for summary judgment.  On appeal, Holmes
challenges the trial court=s order denying his motion for partial summary judgment and
granting Beatty=s motion for partial summary judgment, thereby ruling the
spouses did not own with a right of survivorship a First Southwest Company
account, a Raymond James & Associates, Inc. account, and certain securities
in certificate form.  We reverse and render with respect to the Raymond James
& Associates, Inc. account.  We affirm the remainder of the order.

I.  Background

Thomas
and Kathryn Holmes were married in 1972.  Kathryn died on July 22, 1999. 
Beatty, Kathryn=s son from a previous marriage, was appointed independent
executor of her estate.  Thomas died on May 4, 2000, about nine months after
Kathryn=s death.  Holmes, Thomas=s son from a previous marriage, was
appointed independent executor of his estate.          During the marriage,
Kathryn and Thomas placed a significant amount of their community property into
brokerage accounts.[1]  When Kathryn
died, some brokerage accounts were in existence and held securities.  Kathryn
and Thomas also held some securities in certificate form that had been issued
out of brokerage accounts.  The property that is the subject of these appeals
has a multi-million dollar value.








Beatty
sued Holmes, seeking a declaratory judgment that certain accounts and
securities in certificate form were not owned by Kathryn and Thomas with a
right of survivorship, and thus did not pass to Thomas upon Kathryn=s death.  Instead, Beatty claimed
that Kathryn=s one-half interest in this community property became an asset of her
estate upon her death.  Holmes filed a counterclaim, alleging the property was
owned by Kathryn and Thomas with a right of survivorship.  Therefore, Holmes
sought an adjudication that the accounts and securities became the sole
property of Thomas upon Kathryn=s death and subsequently became assets of Thomas=s estate upon his death.

Pertinent
to this appeal, Beatty filed an AAmended Motion for Partial Summary
Judgment.@  Holmes filed a AMotion for Partial Summary Judgment@ followed by a ASupplemental Motion for Partial
Summary Judgment.@[2] 

On March
18, 2005, the trial court signed an AAmended Order on [Beatty=s] Amended Motion for Partial Summary
Judgment and [Holmes=s] Motion for Partial Summary Judgment and Supplemental
Motion for Partial Summary Judgment.@  The trial court granted summary
judgment in favor of Beatty and denied summary judgment in favor of Holmes as
to certain property.  Relative to this appeal, the trial court ruled that the
following property did not pass to Thomas by right of survivorship at Kathryn=s death:

!                  
a First Southwest Company
brokerage account; 

!                  
a Raymond James & Associates,
Inc. brokerage account; and 








!                  
Nine securities
that had been issued out of a Dain Rauscher Securities account, a Kemper
Securities, Inc. account, or the First Southwest account, and were held by
Kathryn and Thomas in certificate form.[3]

Further,
the trial court stated the order did not dispose of claims pertaining to the separate
or community character of the property or any other allegations concerning the
assets.  Thus, the trial court ruled only on the dispute regarding whether the
assets were held with a right of survivorship, leaving all other issues for
later resolution.  This order was rendered final and appealable after the trial
court severed it from the remainder of the case.  Holmes appeals from this
order.[4]

II.  The Issues and Our Review

Although
their grounds were numbered differently, Beatty and Holmes raised the same
issues in their respective motions for summary judgment: (1) whether the
account agreements for the brokerage accounts were sufficient to create a right
of survivorship under applicable provisions of the Texas Probate Code; and (2)
whether the securities in certificate form were held by Kathryn and Thomas with
a right of survivorship under the Probate Code.  Holmes also raised an additional
ground, contending alternatively that the Raymond James account was governed by
Florida law, and the account agreement was sufficient to create a right of
survivorship under Florida law. 








On
appeal, Holmes presents four issues challenging the trial court=s partial summary judgment order.  In
his first, second, and fourth issues, he contends: (1) the First Southwest and
Raymond James account agreements were sufficient to create a right of
survivorship in these accounts under the Texas Probate Code; and (2) the
securities which had been issued out of the Dain Rauscher, Kemper, and First
Southwest accounts in certificate form were held by Kathryn and Thomas with a
right of survivorship because the account agreements created a right of
survivorship and continued to govern the character of the securities after they
were issued out of the accounts.[5] 
Alternatively, Holmes asserts there is a genuine issue of material fact on
whether the accounts and securities in certificate form were held with a right
of survivorship.  As another alternative, in his third issue, Holmes urges
application of Florida law.

Under
well-established standards governing a traditional motion for summary judgment,
the movant must show there is no genuine issue of material fact and he is
entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop.  Mgmt. Co., 690 S.W.2d
546, 548 (Tex. 1985).  We review a summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take as true
all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  Id.  When, as in
this case, both parties move for summary judgment on the same issues and the
trial court grants one motion and denies the other, we review the summary
judgment evidence presented by both parties, determine all questions presented,
and render the judgment the trial court should have rendered.  Id.

 








III.  Applicable Probate Code Provisions

Chapter
XI of the Texas Probate Code governs non-testamentary transfers of property.  See
Tex. Prob. Code Ann. '' 436B462 (Vernon 2003 & Vernon Supp.
2006).  Chapter XI is divided into three parts.  See id.  Part 1
addresses AMultiple-Party Accounts@ in general.  See Tex.
Prob. Code Ann. '' 436B449.  Part 2 concerns AProvisions Relating to Effect of
Death.@  See Tex. Prob. Code Ann. ' 450.  Part 3 is entitled ACommunity Property With Right of
Survivorship.@  See Tex. Prob. Code Ann. '' 451B462.

As the
title indicates, Part 3 includes various provisions governing a right of
survivorship in community property.  See id.  In particular, section 451
provides, A[a]t any time, spouses may agree between themselves that all or part of
their community property, then existing or to be acquired, becomes the property
of the surviving spouse on the death of a spouse.@  Tex.
Prob. Code Ann. ' 451.  Section 452, entitled AFormalities,@ establishes the requirements for an
effective agreement between spouses as follows:

An
agreement between spouses creating a right of survivorship in community
property must be in writing and signed by both spouses.  If an agreement in
writing is signed by both spouses, the agreement shall be sufficient to create
a right of survivorship in the community property described in the agreement if
it includes any of the following phrases:

(1) Awith right of survivorship@;

(2) Awill become the property of the survivor@;

(3) Awill vest in and belong to the surviving spouse@; or

(4) Ashall pass to the surviving spouse.@

An agreement that otherwise meets the requirements of
this part, however, shall be effective without including any of those phrases.

Tex.
Prob. Code Ann. ' 452.  








The party claiming spouses created a right of survivorship
under Part 3 bears the burden to prove an agreement complying with section 452.
 See Tex. Prob. Code Ann. ' 456(a), (b)(3)
(providing applicant for adjudication an agreement effectively created right of
survivorship under Part 3 must prove to the satisfaction of the court that,
inter alia, agreement was executed with the formalities required by law); see
also Pressler v. Lytle State Bank, 982 S.W.2d 561, 564 (Tex. App.CSan Antonio 1998,
no writ) (recognizing party claiming to own joint account by right of
survivorship under section 439 of Part 1, governing multi-party accounts in
general, bears burden to prove the claim).

In this
appeal, the parties agree that Part 3 is the controlling portion of Probate
Code Chapter XI and specifically, Kathryn and Thomas were required to comply
with section 452 to create a right of survivorship in the community property at
issue.

IV.  The First Southwest Account

We will
first address the parties= dispute on whether Kathryn and Thomas created a right of
survivorship in the First Southwest account under section 452.[6] 
To open the First Southwest account, Kathryn and Thomas both signed a ANew Account Agreement@ dated September 15, 1997.  This
document appears to be a pre-printed form provided by First Southwest with
information then recorded particular to Kathryn=s and Thomas=s account.  The AAccount Name@ at the outset of the agreement is AThomas J. Holmes Kathryn V. Holmes JT
TEN.@  Above the spouses= signatures is the following
statement:

By signing below, the undersigned agrees to all terms
of the customer agreement printed on this side and the reverse side of this
document.  The undersigned acknowledges receipt of a copy of this agreement and
the information brochure prepared by First Southwest Company.  The undersigned
certifies that the undersigned has read and understands all provisions of this
agreement. . . .

(original in all
capitals).  Following the spouses= signatures are various provisions
comprising the customer agreement.








The copy
of the account agreement in our record is quite difficult to read.  However, it
appears, and the parties apparently do not dispute, that the account agreement
does not include any of the phrases listed in section 452 as sufficient to
create a right of survivorship, specifically express the account is held with a
right of survivorship, or otherwise state the intended disposition of the
account upon the death of one spouse.  The only term purportedly used to
designate the character of the account is the acronym AJT TEN@ next to Kathryn=s and Thomas=s names in the account title. 
However, AJT TEN@ is not defined in the account agreement.  Moreover, there is no summary
judgment evidence showing AJT TEN@ was defined in any document incorporated into the account
agreement or that Kathryn and Thomas were otherwise provided the definition
when they opened the account.  The Ainformation brochure@ referenced in the above-cited
provision is not part of the summary judgment evidence.[7]

Nevertheless,
Holmes contends the account agreement Aotherwise@ met the requirements of Part 3 and
thus was effective as a survivorship agreement pursuant to section 452.  See
Tex. Prob. Code Ann. ' 452.  Holmes asserts his summary
judgment evidence established that AJT TEN@ is commonly recognized in the
securities industry and by First Southwest to mean Ajoint tenancy with right of
survivorship.@








In
contrast, Beatty contends the First Southwest account agreement failed to
satisfy section 452 for several reasons: the account agreement did not
constitute an agreement between Kathryn and Thomas; AJT TEN,@ without more, was insufficient
survivorship language under section 452; and extrinsic evidence regarding the
common meaning of  AJT TEN@ cannot be used to prove the account agreement created a
right of survivorship.

For the
reasons explained below, we conclude as follows: (A) a survivorship provision,
if any, in the First Southwest account agreement can constitute an agreement
between Kathryn and Thomas; (B) however, the acronym AJT TEN@ as used in the First Southwest
account agreement was insufficient, without more, to create a right of
survivorship; (C) Holmes=s proffered extrinsic evidence regarding the meaning
purportedly assigned to AJT TEN@ in the securities industry and by First Southwest cannot be
used to prove the account agreement created a right of survivorship; and (D)
accordingly, Kathryn and Thomas failed to create a right of survivorship in the
First Southwest account under section 452.[8]

A.        A Survivorship Provision,
If Any, In The First Southwest Account Agreement Can Constitute An Agreement
Between Kathryn And Thomas

First,
Beatty argues the First Southwest account agreement was merely an agreement
between the spouses as one party and the brokerage firm as the other partyCnot an agreement Abetween@ Kathryn and Thomas as required by
section 452.  See Tex. Prob. Code
Ann. ' 452. We disagree.  Beatty cites no authority to support this
proposition, and we have found no authority directly addressing this issue.  In
fact, we have found very little authority addressing section 452, or any
provisions comprising Part 3 of Probate Code Chapter XI, although they were
enacted in 1989.  See Tex. Prob.
Code Ann. '' 451B462.








However,
in Haynes v. Stripling, the court addressed whether the signature cards
for two savings accounts constituting community property created effective
survivorship agreements pursuant to the 1987 Texas constitutional amendment,
which was the precursor to Part 3.  See 812 S.W.2d 397, 398 (Tex. App.CEastland 1991, no writ).  The
signature cards provided by the financial institutions were signed by both
spouses and contained the language, AJoint Tenancy With Right of
Survivorship.@  See id.  The court noted that, based on its effective
date, the recently-enacted Part 3 did not apply to the case.  Id. at 399B400.  However, the court found the
survivorship agreements were validated by the 1987 amendment to the Texas
Constitution which states that Aspouses may agree in writing that all or part of their
community property becomes the property of the surviving spouse on the death of
a spouse.@  See id. at 398B400 (quoting Tex.
Const. art. XVI, ' 15) (1987).  We recognize that whether the signature cards
constituted an agreement between the spouses was not a disputed issue in
Haynes.  See id.  Rather, the court focused on whether the
amendment applied retroactively to validate the survivorship provisions.  See
id.  Regardless, the court gave no indication that a survivorship
provision contained in an account form provided by a financial institution
could not constitute an effective survivorship agreement between
spouses.  See id.

Moreover,
nothing in the subsequently enacted section 452 provides that a  survivorship
agreement cannot be contained within an account agreement between the spouses
and a brokerage firm or other financial institution.  See Tex. Prob. Code Ann. ' 452.  Nevertheless, Beatty asserts
the purpose of the First Southwest account agreement was to mandate how
business would be transacted between the brokerage firm and the account
holders.  He asserts the account agreement identified the parties as the Aundersigned,@ which referred to Kathryn and Thomas
collectively, and Ayou@ or Ayour,@ which referred to First Southwest.  He further asserts the
account agreement did not state it was binding between spouses.








We
acknowledge that most provisions in the account agreement governed the
relationship between the spouses and First Southwest.[9] 
However, a provision, if any, conveying a right of survivorship would
necessarily govern the relationship between the spouses with respect to
ownership of the account.  Whether the First Southwest account agreement
contained a survivorship provision is another question.  However, effectively,
any survivorship provision was an agreement between Kathryn and Thomas
encompassed within their larger agreement with First Southwest.

B.        AJT TEN@ Was Insufficient, Without More, To Create A Right Of
Survivorship In The First Southwest Account

 

Next,
Beatty=s contends that AJT TEN@ in the First Southwest account
agreement was insufficient, without more, to create a right of survivorship. 
He suggests an explanation regarding the intended disposition of the property
is required to satisfy section 452.  We disagree that an explanation is
required, but we do agree that AJT TEN@ was insufficient, without more, to create a right of
survivorship.[10]

The
parties do not cite, and we have not found, any cases addressing what language,
in addition to the phrases specifically listed, is sufficient to create a right
of survivorship under section 452.  Beatty contends cases addressing the
language required to create a right of survivorship under Probate Code section
439(a) provide guidance.  We disagree.








Section
439, entitled ARight of Survivorship,@ is included in Part 1 of Probate Code Chapter XI, which
applies to multiple-party accounts in general.  See Tex. Prob. Code Ann. ' 439.  AThe provisions of Part 1 . . . apply
to multiple-party accounts held by spouses with a right of survivorship to the
extent that such provisions are not inconsistent with the provisions of [Part
3].@  Tex.
Prob. Code Ann. ' 462.  Section 439 states in relevant part:

Sums remaining on deposit at the death of a party to a
joint account belong to the surviving party or parties against the estate of
the decedent if, by a written agreement signed by the party who dies, the
interest of such deceased party is made to survive to the surviving party or
parties.  Notwithstanding any other law, an agreement is sufficient to confer
an absolute right of survivorship on parties to a joint account under this
subsection if the agreement states in substantially the following form:  AOn the death of one party to a joint
account, all sums in the account on the date of the death vest in and belong to
the surviving party as his or her separate property and estate.@  A survivorship agreement will not
be inferred from the mere fact that the account is a joint account. . . .      

Tex.
Prob. Code Ann. ' 439(a).[11]








Like
section 452, which prescribes four phrases sufficient to create a right of
survivorship in community property, section 439(a) sets forth a statement
sufficient to create a right of survivorship in multiple-party accounts.  See
id.; Tex. Prob. Code Ann. ' 452.  Further, just as the phrases
prescribed in section 452 are not exclusive, an agreement need not contain the
language set forth in section 439(a) to create a right of survivorship in
multiple-party accounts.  See Stauffer v. Henderson, 801 S.W.2d
858, 863 n.5 (Tex. 1990); Ivey v. Steele, 857 S.W.2d 749, 751 (Tex. App.CHouston [14th Dist.] 1993, no writ).
Nevertheless, we have suggested that section 439(a) requires more extensive
language than section 452.  See Ivey, 857 S.W.2d at 751. 
Particularly, in Ivey, we held an agreement which Aonly indicates that it is a >Joint Account with Right of
Survivorship,= without additional explanatory language@ fails to confer a right of
survivorship under section 439(a).  Id.[12] 
However, our interpretation of section 439(a) in Ivey is contrary to the
plain language of section 452, providing that an agreement which Aincludes@ the phrase Awith right of survivorship@ meets its requirements.  See Tex. Prob. Code Ann. ' 452. Thus, section 452 expressly
allows more concise language than section 439(a).  Compare id. with
Ivey, 857 S.W.2d at 751.  Consequently, we reject Beatty=s assertion that cases applying
section 439(a), including Ivey, are analogous to this case relative to
the language necessary to create a right of survivorship under section 452.








Accordingly,
we must determine what language is sufficient under section 452. Although the
Legislature suggested four possible phrases that suffice, A[a]n agreement that otherwise meets
the requirements of [Part 3]@ is effective without including any of those phrases.  Tex. Prob. Code Ann. ' 452.  The Legislature did not
clarify how an agreement Aotherwise meets the requirements@ of Part 3, considering Part 3
encompasses all provisions concerning a right of survivorship in community
property.  However, sections 451 and 452 are both contained in Part 3. 
Pursuant to section 451, spouses may agree that community property Abecomes the property of the surviving
spouse on the death of a spouse.@  Tex.
Prob. Code Ann. ' 451.  The suggested phrases set
forth in section 452 all contain some type of survivorship language.  See
Tex. Prob. Code Ann. ' 452.  Therefore, we conclude that an
agreement Aotherwise meets the requirements@ of Part 3 if it sufficiently conveys
the spouses= intent to create a right of survivorship.[13]

In this
case, mere inclusion of AJT TEN@ next to Kathryn=s and Thomas=s names in the title of First
Southwest account agreement did not sufficiently convey intent to create a
right of survivorship.  As Beatty asserts, parties may own property as joint
tenants without being subject to a right of survivorship.  Moreover, nothing in
the account agreement as a whole indicated these initials meant Ajoint tenancy with right of
survivorship@ or otherwise conveyed Kathryn=s and Thomas=s intent to own this account with a
right of survivorship.  Therefore, AJT TEN@ as used in the First Southwest
account agreement was insufficient, without more, to create a right of
survivorship in the account. 

Accordingly,
the dispositive question becomes whether Holmes=s proffered evidence regarding the
common meaning of AJT TEN@ can be used to prove the account agreement created a right
of survivorship.  

C.        Holmes=s Proffered Evidence Regarding The
Meaning Purportedly Assigned To AJT TEN@ In the Securities Industry And By
First Southwest Cannot Be Used To Prove The Account Agreement Created A Right
Of Survivorship.








Beatty
argues that Holmes=s proffered extrinsic evidence cannot be considered because
only the spouses= written agreement is determinative as to their intent to
create a right of survivorship.  In contrast, Holmes argues the evidence may be
considered because (1) Kathryn and Thomas were bound by all customs and usages
of the securities industry pursuant to the First Southwest account agreement;
and (2) under ordinary contract principles, Atrade-usage@ evidence is always admissible to
explain a contractual term.  Holmes contends his uncontroverted summary
judgment evidence established that AJT TEN@ is recognized as a designation for Ajoint tenancy with right of
survivorship@ in the securities industry[14] and by First
Southwest.[15] 
Alternatively, Holmes argues this evidence raised, at least, a genuine issue of
material fact on whether the account was owned with a right of survivorship. 

We
conclude that Holmes=s proffered evidence regarding the common meaning of  AJT TEN@ cannot be considered when
determining whether the account agreement created a right of survivorship for
the following reasons: (1) Part 3 indicates extrinsic evidence may not be used
to prove spouses= intent to create a right of survivorship in community
property; and (2) Kathryn and Thomas were not bound by all customs and usages
in the securities industry pursuant to the First Southwest account agreement
relative to creation of a right of survivorship; and (3) the rule precluding
consideration of extrinsic evidence in general applies equally to trade-usage
evidence.

 

 








1.         Part 3 indicates extrinsic
evidence may not be used to prove intent to create a right of survivorship in
community property.

The provisions
comprising Part 3 indicate extrinsic evidence may not be used to prove intent
to create a right of survivorship in community property.  Sections 451 and 452
clearly require that spouses agree in writing to create a right of survivorship
in community property.  See Tex.
Prob. Code Ann. '' 451, 452. Morever, section 452 mandates that the agreement
include one of the listed phrases or otherwise meet the requirements of Part 3.
 See Tex. Prob. Code Ann. ' 452.  In addition, Part 3 includes
the following provision: 

ATransfers at death resulting from
agreements made in accordance with [Part 3] of this code are effective by
reason of the agreement involved and are not testamentary transfers.  Such
transfers are not subject to the provisions of this code applicable to
testamentary transfers except as expressly provided otherwise in this code.@  

Tex.
Prob. Code Ann. ' 454 (emphasis added).  Consequently,
these provisions of Part 3 indicate the Legislature contemplated that spouses
express their intent to create a right of survivorship within the written
instrument before community property may pass by right of survivorship outside
the testamentary provisions of the Probate Code.[16]








In
addition, Part 3 prescribes applicable procedures when, a surviving spouse, or
the representative of a surviving spouse, requests a court order stating that
an agreement satisfies the requirements of Part 3 and is effective to create a
right of survivorship in community property.  See Tex. Prob. Code Ann. ' 456(a).  The applicant must prove to
the satisfaction of the court that, inter alia, the agreement was executed with
the formalities required by law.  See id. ' 456(b).  Section 456(c), entitled AMethod of Proof,@ sets forth procedures only for
proving the signatures of the deceased spouse and the surviving spouse.  See
id. ' 456(c).  Significantly, there is no procedure outlined in section 456
for proving an agreement satisfies the formalities of Part 3 through extrinsic
evidence.  See generally id. ' 456.  To the contrary, section 456
mentions only the filing of the agreement with an application for an
adjudication that the agreement satisfies the requirements of Part 3.  See
id. ' 456(b).

Furthermore,
in the absence of any authority addressing this issue relative to section 452,
Beatty again cites for analogy cases addressing section 439(a).  In Stauffer,
the Texas Supreme Court held that section 439(a) makes a written instrument
determinative of a right of survivorship in a joint account.  801 S.W.2d at
863.  Accordingly, extrinsic evidence is not allowed to create a right of
survivorship under section 439(a) that is not established by a written
agreement signed by the deceased joint account party.  Id. at 865. 
Subsequently, courts have repeatedly cited Stauffer as prohibiting
extrinsic evidence to prove intent to create a right of survivorship under
section 439(a).[17]








In this
instance, we agree with Beatty that cases addressing admissibility of extrinsic
evidence to prove intent to create a right of survivorship under section 439(a)
are applicable to an agreement governed by section 452.  As we have discussed,
sections 439(a) and 452 differ as to the language required to create a right of
survivorship.  Compare Ivey, 857 S.W.2d at 751 with Tex. Prob. Code Ann. ' 452.  Further, section 439(a)
requires only the signature of the decedent whereas section 452 requires the
signatures of both spouses.  Compare Tex.
Prob. Code Ann. ' 439 with ' 452.  However, sections 439(a) and
452 are identical with respect to emphatically requiring an agreement in
writing to create a right of survivorship.  See Tex. Prob. Code Ann. '' 439, 452.  In addition, like Part 3,
Part 1 (which includes section 439) provides that transfers of property
pursuant to section 439 Aare effective by reason of the account contracts involved@ and are not subject to testamentary
provisions of the Probate Code.  See Tex.
Prob. Code Ann. ' 441.  The Stauffer court cited section 441, among
other portions of Part 1, when reasoning the written agreement is determinative
of intent to create right of survivorship in a joint account.  See 801
S.W.2d at 863.  Consequently, we see no reason the rule precluding
consideration of extrinsic evidence under section 439(a) should not apply to an
agreement governed by section 452.[18]

 








However,
our inquiry does not end here because Holmes contends his proffered evidence
regarding the meaning of AJT TEN@ may, nonetheless, be considered pursuant to the First
Southwest account agreement and ordinary contract principles.

2.         Kathryn and Thomas were
not bound by all customs and usages in the securities industry pursuant to the
First Southwest account agreement relative to creation of a right of
survivorship.

Holmes
contends that he may rely on his Atrade-usage@ evidence pursuant to the following
provision in the First Southwest account agreement:

Applicable Rules and Regulations: All transactions shall be subject
to the constitution, rules, regulations, customs and usages of the exchange or
market and its clearinghouse, if any, upon which such transactions are
executed, except as otherwise specifically provided in this agreement.

According to Holmes, this
provision signifies Kathryn=s and Thomas=s agreement to be bound by all customs and usages of the
securities industry, including the customary meaning of AJT TEN@ as Ajoint tenancy with right of
survivorship.@  We disagree.  As Beatty urges, we construe this provision as applying
to transactions by which First Southwest conducted activities within the
spouses= account and thus governing the
relationship between the spouses and First Southwest.  This provision did not
establish that all customs and usages in the securities industry governed
ownership of the account as between the spouses.[19] 
Regardless, relying on this provision, as urged by Holmes, would still require
consideration of extrinsic evidence regarding the meaning of AJT TEN@ and thus, involve looking outside
the written instrument to determine intent to create a right of survivorship,
contrary to the requirements of Part 3.








3.         The rule precluding
extrinsic evidence in general to prove intent to create a right of survivorship
applies equally to trade-usage evidence.

 Holmes
also contends his Atrade-usage@ evidence may be considered under general contract
principles.  Ordinarily, only when a contract is first determined to be
ambiguous, may a court consider the parties= interpretation and admit extraneous
evidence to determine the true meaning of the instrument.  Nat=l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d
517, 520 (Tex. 1995); Mescalero Energy, Inc. v. Underwriters Indem. Gen.
Agency, Inc., 56 S.W.3d 313, 320 (Tex. App.CHouston [1st Dist.] 2001, pet.
denied).  Nonetheless, extrinsic evidence may be admissible Ato give the words of a contract a
meaning consistent with that to which they are reasonably susceptible, i.e.,
to >interpret= contractual terms.@  Nat=l Union, 907 S.W.2d at 521; Mescalero,
56 S.W.3d at 320.  For instance, Atrade‑usage@ evidence regarding the
commonly-understood meaning of a term in a specialized industry may be
admissible to explain, supplement, or qualify the terms of an agreement, but
may not be used to contradict an express term.  See Tex. Bus. & Com. Code Ann. ' 1.303(d) (Vernon Supp. 2006);
Mescalero, 56 S.W.3d at 320; Transcontinental Gas Pipeline Corp. v.
Texaco, Inc., 35 S.W.3d 658, 670 (Tex. App.CHouston [1st Dist.] 2000, pet.
denied) (citing former version of Business and Commerce Code section 1.303(d));
see Nat=l Union, 907 S.W.2d at 521. 








Citing
these principles, Holmes asserts trade-usage evidence is always admissible to
explain a contractual term, despite the general rule prohibiting consideration
of extrinsic evidence.  Holmes asserts the Stauffer court suggested
ordinary contract principles apply when determining whether parties created a
right of survivorship under section 439(a).  In particular, when discussing
that extrinsic evidence is generally inadmissible, the court interjected: AIf [the written agreement] is
complete and unambiguous, then parol evidence is inadmissible, as with written
agreements generally, to vary, add to or contradict its terms.@  Stauffer, 801 S.W.2d at 863
(emphasis added).  We acknowledge this statement could be read as an
implication that ordinary contract principles apply when deciding whether
parties created a right of survivorship.  Further, we recognize Holmes
introduces evidence to explain the meaning of an acronym actually contained in
the spouses= account agreement, as opposed to evidence of their general intent.      

However,
we conclude that the rule precluding consideration of extrinsic evidence in
general applies equally to trade-usage evidence for two reasons: (a) ordinary
contract principles allowing consideration of extrinsic evidence in some
circumstances are inapplicable when determining intent to create a right of
survivorship; and (b) the rationale for precluding extrinsic evidence in
general to prove intent to create a right of survivorship applies to
trade-usage evidence.

a.         Ordinary contract
principles allowing consideration of extrinsic evidence in some circumstances
are  inapplicable when determining intent to create a right of survivorship. 

Several
courts applying Stauffer, including this court, have seemingly held that
ordinary exceptions to the parol evidence rule are not applicable when
determining intent to create a right of survivorship under section 439(a).  For
instance, in Evans v. First Nat=l Bank of Bellville, a ATime Deposit Agreement and Signature
Card@ clearly provided for a joint tenancy
with right of survivorship between two signatories to a bank Aaccount.@  946 S.W.2d 367, 370, 374 (Tex. App.CHouston [14th Dist.] 1997, writ
denied).  However, we found the agreement was ambiguous because it was unclear
which of three CDs constituted the Aaccount@ covered by the agreement.  See
id. at 374B75.  We were constrained to follow the Stauffer mandate that
extrinsic evidence may not be utilized to prove intent of the parties with
respect to creation of a joint tenancy with right of survivorship.  Id.
at 375.  

However,
we recognized the Stauffer court did not address the reciprocal question
of whether extrinsic evidence may be introduced when the joint account
agreement is ambiguous.  Id.  Significantly, we stated, 








. . . based upon the careful wording of the Stauffer
opinion . . . agreements relating to joint accounts are to be interpreted
according to contract rules generally.  Where no ambiguity exists, parol
evidence is improper. Extrinsic evidence is permissible, however, to explain an
ambiguity where the signature card or other agreement is unclear as to some
aspect of the parties= agreement, other than their intent to create a
survivorship account . . . Our holding in this case is limited to
circumstances such as these where a party has expressed a clear intent to
create a survivorship account, but additional evidence is required to determine
what funds are properly subject to the survivorship agreement.

Id. (emphasis added).  Therefore, we
held that extrinsic evidence was admissible because the intent to create a
right of survivorship was adequately expressed in the account agreement, but it
was unclear which CDs were subject to this survivorship agreement.  See id. 
However, we made clear that the ordinary contract principle allowing admission
of extrinsic evidence when an agreement is ambiguous is not applicable
when determining the parties= intent to create a right of survivorship.  See id.








Similarly,
a sister court has recognized that an agreement Aeither does or does not@ create a right of survivorship under
section 439(a) as a matter of law, and contract principles normally allowing
extrinsic evidence to shed light on an ambiguity are inapplicable.  See Shaw
v. Shaw, 835 S.W.2d 232, 234 (Tex. App.CWaco 1992, writ denied) (further
stating that Stauffer interpreted section 439(a) as abrogating all basic
contract principles such that only the statute controls interpretation of a
survivorship agreement);[20] In re
Dillard, 98 S.W.3d 386, 396B97 & n.5 (Tex. App.CAmarillo 2003, pet. denied)
(recognizing Stauffer precludes extrinsic evidence of intent to create
right of survivorship, but did not prohibit extrinsic evidence where agreement
contained requisite survivorship language, but was unclear as to which account
agreement it applied).[21]

Therefore,
this court and sister courts have implicitly held that ordinary exceptions to
the parol evidence rule, which may allow admission of extrinsic evidence in
general contract disputes, are not applicable when determining intent to create
a right of survivorship.  Accordingly, these decisions support a conclusion
that trade-usage evidence may not be used to prove that a term used in an
agreement was intended to mean Aright of survivorship.@[22]








In
addition, the nature of a survivorship disputeCunder section 439 or section 452Csupports this conclusion.  When
determining whether parties intended to create a right of survivorship, we are
not addressing an ordinary contract dispute in the classic sense. Rather, we
are addressing a situation in which Texas law dictates parties do not even have
a certain type of agreementCa survivorship agreementCunless they have executed a written
instrument complying with statutory formalities, including expression of their
intent to create a right of survivorship.  Therefore, if we must look outside
the written instrument to determine that a term used therein means Aright of survivorship,@ the parties have not expressed their
intent within the written instrument.

b.         The rationale for
precluding extrinsic evidence in general to prove intent to create a right of
survivorship applies equally to trade-usage evidence.

The
rationale for precluding extrinsic evidence in general to prove intent to
create a right of survivorship also supports a finding that a party may not
rely on trade-usage evidence to prove that a term used in an agreement means Aright of survivorship.@  As courts have recognized with
respect to section 439(a):

[T]he legislature wisely intended to require a
specific, definite written agreement before such property would be allowed to
pass outside a testamentary instrument, thereby eliminating the increasing and
time‑consuming burden upon our trial courts of attempting to ascertain a
deceased=s intent through the uncertain avenue
of extrinsic parol evidence. 

Kitchen v. Sawyer, 814 S.W.2d 798, 801 (Tex. App.CDallas 1991, writ denied) (quoting Stauffer
v. Henderson, 746 S.W.2d 533, 536 (Tex. App.CAmarillo 1988), aff=d, 801 S.W.2d 858 (Tex. 1990)).  The same uncertainty
would exist if trade-usage evidence were permissible to prove that a term used
in an agreement means Aright of survivorship.@








We must
note that the law seems somewhat unclear on the requirements for proving the
meaning of a contractual term through trade-usage evidence.  We have held that,
to establish custom and usage of trade with respect to a contract, there must
be evidence (1) the custom was generally known, or had been established for a
sufficient length of time to become generally known, and (2) it was known to
all parties to the contract or the parties had contracted with reference to
it.  See Texas Gas Exploration Corp. v. Broughton Offshore Ltd. II, 790
S.W.2d 781, 785B86 (Tex. App.CHouston [14th Dist.] 1990, no writ) (citing Arnold D.
Kamen & Co. v. Young, 466 S.W.2d 381, 386 (Tex. Civ. App.CDallas 1971, writ ref=d n.r.e.)); Corso v. Carr, 634
S.W.2d 804, 808 (Tex. App.CFort Worth 1982, writ ref=d n.r.e.).              However,
section 1.303(d) of the Texas Business and Commerce Code imposes a broader
standard:

A course of performance or course of dealing between
the parties or usage of trade in the vocation or trade in which they are
engaged or of which they are or should be aware is relevant in ascertaining
the meaning of the parties= agreement, may give particular meaning to specific terms of
the agreement, and may supplement or qualify the terms of the agreement. . . .

Tex.
Bus. & Com. Code Ann. ' 1.303(d).  Thus,  if the parties to an agreement are not
both engaged in the industry at issue, section 1.303(d) allows custom and usage
of trade to prove the meaning of a contractual term if the parties knew or
should have known of the custom or usage.  See id.

Regardless
of the prevailing standard, it is axiomatic that, when a dispute arises on
whether an agreement effectively created a right of survivorship, one joint
account holderCand in this case both account holdersC will be deceased.  See Kitchen,
814 S.W.2d at 801.  Quite simply, at least one account holder will be
unavailable to express his or her understanding regarding the terms used in the
agreement.  Moreover, as we have discussed, it is the joint account holders= intent that is pertinent when
ascertaining creation of a right of survivorshipCnot the knowledge of the brokerage
firm at issue or the securities industry in general.  Therefore, if trade-usage
evidence were permitted, a fact-finder would attempt to ascertain through the
uncertain avenue of parol evidence whether a party, who is now deceased, knew
or should have known that a term used in the agreement means Aright of survivorship.@  See Exxon Corp. v. Pluff, 94 S.W.3d 22, 30 (Tex. App.C Tyler 2002, pet. denied) (stating
that A[c]ustom and usage is a question of 
fact.@). 








We
conclude the Legislature sought to avoid this type of uncertainty by requiring
a written expression of the spouses= intent before community property may
pass by right of survivorship outside the testamentary provisions of the
Probate Code.[23] 
Consequently, trade usage-evidence may not be used to prove that a term
contained in an agreement means Aright of survivorship@ under section 452.  Accordingly,
Holmes=s proffered evidence regarding the
meaning of AJT TEN@ cannot be considered when determining whether the account agreement
created a right of survivorship.  

D.        The First Southwest Account
Agreement Did Not Create A Right Of Survivorship. 

Finally,
Holmes contends there is, at least, a fact issue on whether the First Southwest
account agreement created a right of survivorship.  Holmes argues Beatty did
not meet his burden to show entitlement to summary judgment because he failed
to negate Kathryn=s and Thomas=s intent to create a right of survivorship.  Although Beatty
bore the burden to prove he was entitled to summary judgment, Holmes would bear
the ultimate burden to prove the account was owned by Kathryn and Thomas with a
right of survivorship.  See Tex.
Prob. Code Ann. ' 456(a),(b)(3); see also Pressler, 982 S.W.2d
at 564.  In reconciling these standards, Beatty did not have the burden to
negate Kathryn=s and Thomas=s intent to create a right of survivorship.  Instead, he bore
the burden to show that Holmes will ultimately be unable to prove Kathryn and
Thomas intended to create a right of survivorship.








By
introducing the account agreement, Beatty met this burden.  Because AJT TEN@ was insufficient to create a right
of survivorship and Holmes=s proffered evidence regarding the meaning of the acronym may
not be considered, there was no fact issue that could have been raised
regarding existence of a survivorship provision.  Instead, the First Southwest
account agreement failed to create a right of survivorship as a matter of law. 
Accordingly, the trial court did not err by granting Beatty=s motion for summary judgment and
denying Holmes=s motion for summary judgment with respect to the First Southwest account
and ruling the account did not pass by right of survivorship to Thomas upon
Kathryn=s death.

V.  The Raymond James Account

To open
the Raymond James account, Kathryn and Thomas both signed a document entitled ANew Account Form@ on September 19, 1995.  This
document also appears to be a pre-printed form provided by Raymond James with
information then completed particular to Kathryn=s and Thomas=s account.  Near the top of the form
is a section entitled AAccount Classification,@ that sets forth various options with
corresponding boxes, allowing a classification to be chosen, as follows:

9Individual                               9Tenants in Common          9Custodial       9Investment
Club

9Joint (WROS)            9Corporation                       9Estate             9IRA

9Joint Tenants by Entirety       9Partnership                        9Trust . . .          9Other

9Joint Community Property     9Proprietorship . . .           

Only the box
corresponding with AJoint (WROS)@ is marked on Kathryn=s and Thomas=s form, reflecting that this
classification was chosen for their account.  In addition, the AAccount Title@ on the form is AThomas J. Holmes & Kathryn V.
Holmes JTWROS.@








Above
Kathryn=s and Thomas=s signatures is the following
statement, ABy signing below, I acknowledge that I have received, read, understand
and agree to abide by all the terms and conditions set forth in the Client
Agreement incorporated herein by this reference.@  The referenced AClient Agreement@ consists of several pages of
provisions.  The ANew Account Form@ and AClient Agreement@ do not include any of the phrases
listed in section 452, specifically express that the account is held with a
right of survivorship, or otherwise state the intended disposition of the
account upon the death of one spouse.  The initials AJoint (WROS)@ and AJTWROS@ are not defined in the ANew Account Form@ or the incorporated AClient Agreement.@








Nonetheless,
Holmes contends the Raymond James account agreement Aotherwise@ met the requirements of Part 3 of
Probate Code Chapter XI and thus created a right of survivorship pursuant to
section 452.  The parties present the same issues concerning this account that
we considered relative to the First Southwest account: (1) whether the account
agreement between the spouses and Raymond James could constitute an agreement between
Kathryn and Thomas; (2) whether an explanation regarding disposition of the
property was required under section 452; (3) and whether Holmes=s summary judgment evidence
purportedly demonstrating AJTWROS@ is recognized  as a designation for Ajoint tenancy with right of
survivorship@ in the securities industry[24] and by
Raymond James[25] may be
considered.  Holmes also presents additional arguments particular to the
Raymond James account: (1) several courts have effectively defined AJTWROS@ to mean Ajoint tenancy with right of
survivorship@; and (2) Beatty admitted in a facsimile sent to the Holmes family
assistant after Kathryn=s death that AJTWROS@ in the Raymond James account agreement meant Ajoint tenancy with right of
survivorship.@








As
discussed, we have rejected Beatty=s contention that Kathryn and Thomas
could not include their survivorship agreement, if any, within their account
agreement with the brokerage firm.  We have also rejected Beatty=s suggestion that an agreement must
contain an explanation regarding disposition of the property to satisfy section
452.  However, this time, we conclude that the Raymond James account agreement
sufficiently conveyed Kathryn=s and Thomas=s intent to create a right of survivorship.  Therefore, our
previous holding that Holmes=s proffered extrinsic evidence cannot be considered is
immaterial to our conclusion regarding the Raymond James account.[26] 
In addition, we need not consider whether courts have defined AJTWROS@ to mean Ajoint tenancy with right of
survivorship,@[27] and whether Holmes may rely on
Beatty=s fax to prove a right of
survivorship in this account.[28]

We can
discern Kathryn=s and Thomas=s intent to create a right of survivorship in the Raymond
James account from the instrument alone.  Unlike the First Southwest account,
we are not presented with only an acronym next to the spouses= name in the account title.  Rather,
Kathryn and Thomas affirmatively selected an AAccount Classification.@  They were presented with fourteen
options for the account classification and selected AJoint (WROS)@ to the exclusion of all other
options.  Significantly, Kathryn and Thomas rejected Atenancy in common@Cthe very designation that Beatty
attempts to assign to this account.  We can conceive of no other meaning
Kathryn and Thomas could have contemplated for AJoint (WROS),@ considering that none of the other
options can possibly be construed as meaning joint tenancy with rights of
survivorship.  To adopt Beatty=s reasoning, we would be forced to believe that a brokerage
firm such as Raymond James included numerous options for the account
classification on its account form, except joint tenancy with right of
survivorship, and Kathryn and Thomas intended to choose some other
classification that coincidently is abbreviated as AJoint (WROS).@  We cannot agree with such a
proposition.

We
conclude the agreement sufficiently conveyed the spouses= intent to create a right of
survivorship in the account pursuant to section 452.  Thus, the Raymond James
account became the sole property of Thomas upon Kathryn=s death by right of survivorship. 
Accordingly, the trial court erred by granting Beatty=s motion for summary judgment and
denying Holmes=s motion for summary judgment relative to the Raymond James account.[29]








VI.  Securities Issued Out Of The Dain Rauscher and Kemper Accounts

The
parties dispute whether securities which had been issued out of the Dain
Rauscher and Kemper accounts in certificate form were owned by Kathryn and
Thomas with a right of survivorship.  

To open
each account, Kathryn and Thomas both signed a written account agreement.  In
the order that is the subject of the companion appeal, the trial court ruled
both accounts were owned with a right of survivorship.  This appeal involves
seven securities which had been issued out of the Dain Rauscher account in
certificate form.[30] and one
security which had been issued out of the Kemper account in certificate form.[31]
The trial court ruled these securities did not pass to Thomas by right of
survivorship at Kathryn=s death.








On
appeal, Holmes does not argue that the certificates alone were sufficient to
create a right of survivorship.[32]  Rather, he
argues the survivorship provisions in the account agreements continued to
govern the character of the securities after they were issued out of the
accounts.  Therefore, in effect, Holmes argues the account agreements provided
the written agreements required by section 452 to create a right of
survivorship in the securities.  In contrast, Beatty contends that any
survivorship agreements governing the brokerage accounts were revoked and/or
rendered inapplicable when the securities were removed from the accounts. 
Consequently, Beatty suggests Holmes cannot point to any written agreement
creating a right of survivorship in the securities as required by section 452.[33]

Preliminarily,
we must note that, in our companion opinion issued this day, we have reversed
the trial court=s ruling that the Dain Rauscher account was owned with a
right of survivorship. See Beatty v. Holmes, No. 14-03-00663, ___
S.W.3d ___ (Tex. App.CHouston [14th Dist.] August 14, 2007, no pet h.). 
Nevertheless, for the reasons explained below, we conclude that, even if the
Dain Rauscher account was owned with a right of survivorship, any survivorship
provision did not continue to govern securities which had been issued out of
the account.  Therefore, for discussion purposes only, we will refer to
the Dain Rauscher agreement as if it effectively created a right of
survivorship in the account.  In the companion appeal, Beatty did not challenge
the trial court=s ruling that the Kemper account was owned with a right of
survivorship.  Thus, we will also refer to the Kemper account agreement as if
it effectively created a right of survivorship in the account. 

We must
address yet another issue of first impression because the parties do not cite,
and we have not found, any cases which inform or control our disposition.  We
conclude that (A) any survivorship agreements in the Dain Rauscher and Kemper account
agreements did not apply to securities that had been issued out of the
accounts; and (B) Holmes=s arguments to the contrary are unavailing.

 

 








A.        Any Survivorship Agreements
In The Account Agreements Did Not Apply To Securities Issued Out Of The
Accounts In Certificate Form.

Beatty
contends that any  survivorship provisions in the account agreements did not
apply to securities that had been issued out of the accounts in certificate
form.  We agree.[34]

An
agreement complying with section 452 is Asufficient to create a right of
survivorship in the community property described in the agreement . . .@  Tex.
Prob. Code Ann. ' 452 (emphasis added).  Quite simply, when determining
whether a survivorship agreement governs certain property, we must review what
property was actually Adescribed in the agreement.@  See id.  Clearly,
ascertaining what property was actually Adescribed in the agreement@ is fundamental to determining the
scope of the agreement because spouses may agree that all or part of
their community property pass to the other spouse by right of survivorship.  See
Tex. Prob. Code Ann. ' 451.

The
purported survivorship agreement in the Dain Rauscher account provided:








It is the express intention of the undersigned to
create an estate or account as joint tenants with rights of survivorship
and not as tenants in common.  In the event of the death of either of the
undersigned, the entire interest in the joint account shall be vested
in the survivor or survivors on the same terms and conditions as
theretofore held, without in any manner releasing the decedent=s estate from the liability provided
for in the next preceding paragraph.

(emphasis added).[35]

The
Kemper account agreement is entitled, AJOINT ACCOUNT WITH RIGHT OF
SURVIVORSHIP.@  The Kemper survivorship agreement provided:

In the event of the death of either or any of us, the
entire interest in the joint account shall be vested in the survivor or
survivors on the same terms and conditions as theretofore held, without in
any manner releasing the decedent=s estate from the liability provided
for in the next preceding paragraph. 

(emphasis added).








The
property described in both survivorship agreements were solely the Aaccount[s].@  Moreover, the provisions make clear
that the property governed by the survivorship agreements were the Aaccount[s]@ existing at the death of one
spouse.  It is undisputed the securities were removed from Athe accounts@ when they were distributed in
certificate formCbefore Kathryn=s death.  Both parties refer to the
securities as having been Aissued out of@ the accounts.  Holmes did not present any evidence showing
the certificates were still considered part of the accounts or subject to the
agreements with the brokerage firms after they were issued out of the
accounts.  Indeed, the Kemper account was not even in existence at Kathryn=s death.  Further, there were no
provisions in the account agreements stating they would continue to apply after
distribution of the securities. Therefore, any survivorship agreements
governing the accounts did not encompass securities that had been issued out of
the accounts before Kathryn=s death.[36]

B.        Holmes=s Arguments To The Contrary Are
Unavailing.

Despite
the language of the survivorship agreements, Holmes offers several reasons they
continued to govern the character of the securities even after they were issued
out of the accounts: (1) Kathryn and Thomas purchased the securities through
the accounts; (2) distributions of securities were transactions governed by the
account agreements; (3) it is standard practice for brokerage firms to issue
certificates with the same ownership designation as the account from which they
were distributed; and (4) Beatty admitted in a facsimile that the securities in
certificate form were owned with the same designation as the brokerage accounts
from which they were distributed.  We find these arguments unavailing.

1.         Purchase of the securities
through the accounts

Holmes
contends the securities were governed by the survivorship provisions in the
brokerage account agreements because Kathryn and Thomas purchased the
securities through the accounts.  Thus, Holmes suggests Kathryn and Thomas must
have intended to own the securities with a right of survivorship even after
they were issued out of the accounts, and they were not required to execute a
separate survivorship agreement to govern each certificate.








Holmes
cites the portion of Probate Code section 451 providing that spouses may agree
to establish a right of survivorship in community property Athen existing or to be acquired.@  Tex.
Prob. Code Ann. ' 451.  However, application of the
quoted portion in this case would mean the survivorship provisions governed all
contents of the accounts whether present at inception or later purchased
through the accounts.  This portion of section 451 did not render securities
subject to the survivorship agreements governing the accounts when they were no
longer part of the accounts.

Kathryn
and Thomas may have intended to own the securities in certificate form with a
right of survivorship because they received the same property they had
purchased through the accountsCjust in a different form.  However, this change in form of
ownership is the paramount reason the survivorship agreements did not
continue to apply.  By changing their form of ownership, the spouses actually
took the securities out of the accounts, thereby removing them from the purview
of the survivorship agreements.

In fact,
although we have found no case law on this issue, a commentator has cautioned:

[I]t is important to describe with great specificity
the exact community property covered so that the agreement is not subsequently
deemed to cover more or less property than intended.  This is especially
important if the property subject to the agreement is likely to be sold or
otherwise converted into another form.

Beyer, 10 Texas Law of
Wills, ' 60.9, p. 508 (emphasis added). 
Therefore, contrary to Holmes=s suggestion, this commentator indicated a survivorship
agreement may be affected when subject property is converted to a different
form if the property was not adequately described in the agreement.  We cannot
find a right of survivorship based on assumptions about the spouses= likely intent because section 452
requires a written agreement creating a right of survivorship in Athe described property.@  See Tex. Prob. Code Ann. ' 452.








Contrary
to Holmes=s assertion, Kathryn and Thomas could have easily executed a survivorship
agreement describing all securities they held in certificate form or any other
community property they owned.  See Beyer, 10 Texas Law of Wills, ' 60.9, p. 508 (recognizing that
executing a survivorship agreement in community property is Asimple, convenient, and inexpensive@); see also Tex. Prob. Code Ann. ' 452.  However, they did not do so. 
Their  survivorship agreements describing only the brokerage Aaccount[s]@ did not convey and effectuate any
intent to also create a right of survivorship in securities after they were
removed from the accounts.

2.         Distributions of
securities as transactions governed by the account agreements

In
addition, Holmes argues the account agreements continued to apply to the
securities in certificate form because distributions of securities were transactions
governed by  the account agreements.  Holmes cites the affidavit of his expert,
Warren L. Edmondson, opining that Athe issuance and delivery of
securities out of a particular account is a transaction of that account . . . .@   Further, Holmes refers to account
statements from Dain Rauscher and Kemper showing the distribution of
certificates as transactions in the accounts.[37] 
We agree that all transactions, including the distribution of securities, were
governed by the account agreements; it is axiomatic a brokerage account
agreement would govern transactions concerning the securities in the account.








However,
we are not considering whether a Atransaction@ is a joint tenancy with right of
survivorship.  Rather, we are considering whether the Aproperty@ distributed via the transactions was
held with a right of survivorship.  The purpose of the distribution
transactions was to issue securities out of the accounts.  Once the
transactions were complete, the securities were no longer part of the
accounts.  Accordingly, although the transactions were subject to the account
agreements, the securities distributed in certificate form were no longer
subject to the survivorship agreements governing the accounts once the
transactions were complete.

3.         Typical practice of
brokerage firms to issue certificates with the same designation as the account

Holmes
further argues that the securities were held with a right of survivorship
because brokerage firms typically issue certificates with the same ownership
designation as the account from which they were distributed.  Holmes notes that
the Dain Rauscher account agreement identified the owners as AThomas J. Holmes and Kathryn V.
Holmes, JT TEN,@ and the same acronym is shown on the face of the
certificates issued from the account.  Although the Kemper account agreement
did not contain the acronym AJT TEN,@ those initials are shown on the face of the certificate
issued from the account.  Apparently, Holmes acknowledges for purposes of this
appeal that AJT TEN@ on the face of the certificates is insufficient alone to create a right
of survivorship in the securities.  Rather, he suggests that use of the same
designation on the certificates and in, at least, the Dain Rauscher account
agreement demonstrates brokerage firms issue certificates with the same designation
as the accounts; thus, the survivorship provisions in the account agreements
must govern the securities that had been issued out of the accounts. 

Holmes
also cites the affidavit of Edmundson, in which he opined as follows:

. . . securities must be issued in the same manner
that the account is styled.  For example, if an account is a joint tenancy with
right of survivorship account, all securities issued and delivered out of that
account must also be issued joint tenancy with right of survivorship.  Whether
a security is held in street name or issued out directly to the customer has no
effect on the ownership interest.  The documents signed by the customers
determines the account type and how the account is styled and those same
documents determine how securities are issued out of the account.








However,
the usual practice of brokerage firms to issue certificates with the same
designation as the account does not supplant the requirement of section 452
that there be a written agreement signed by both spouses creating a right of
survivorship in the certificates.   See Tex. Prob. Code Ann. ' 452.  Holmes points to survivorship
provisions in the account agreements as purportedly providing the written agreements
governing the certificates.  However, as we have discussed, any survivorship
agreements clearly described the Aaccount[s]@ only and not securities after they
were removed from the accounts.  Consequently, Holmes may not rely on the
typical practice of brokerage firms to vary the clear terms of the survivorship
provisions and expand them beyond the property clearly described therein.  Cf.
Evans, 946 S.W.2d at 374B75 (allowing extrinsic evidence regarding extent of property
covered by survivorship agreement which was ambiguous regarding what CDs
constituted the Aaccount@ described therein). 

4.         Beatty=s fax

Finally,
Holmes suggests Beatty admitted in a fax that the securities in certificate
form were owned with the same designation as the brokerage accounts from which
they were distributed.  On April 6, 2000 (after Kathryn=s death, but before Thomas=s death), Beatty sent a fax to the
Holmes family assistant.  He attached a list of various securities owned by
Kathryn and Thomas.  In the fax, he stated in pertinent part:

Here are two lists of community assets (stocks and
bonds) one managed by [Thomas] . . . and the other managed by [Kathryn] . . . .
Any item styled COMM or JT COMM is considered community and subject to being
divided equally between [Kathryn=s Estate] and [Thomas].  Items styled
JT WROS became [Thomas=s] separate property on [the date of Kathryn=s death] under the terms of the
agreement signed at Raymond James & Associates.








Holmes
relies on this fax primarily to support his argument that the Raymond James
account was owned with a right of survivorship.  However, Holmes also suggests
that Beatty=s statement that securities issued from the Raymond James account were
owned with a right of survivorship pursuant to the account agreement means he
viewed all certificates as owned with the same classification as the account
from which they were distributed.  In response, Beatty cites his own affidavit
in which he effectively averred that the statements in his fax were incorrect
and he subsequently attempted to retract them.[38] 
Holmes argues that, even if Beatty attempted to retract his statements, his fax
raised, at least, a genuine issue of material fact on whether the securities
were owned with a right of survivorship.

Irrespective
of Beatty=s attempts to retract his statements, the fax is extrinsic evidence that
may not be considered when determining whether the Dain Rasucher and Kemper
account agreements created a right of survivorship in the securities issued
from the accounts.  As we have discussed, the survivorship provisions clearly
described the subject property as only the Aaccount[s].@  Thus, any implied opinion in Beatty=s fax that the survivorship
agreements governed securities which had been removed from the accounts cannot
vary the clear terms of the agreements.  Cf. id.  Moreover,
Beatty was not a party to the account agreements, and his statements were made
after Kathryn executed the agreements.  Accordingly, any interpretation by
Beatty concerning the scope of the survivorship agreements is immaterial when
determining Kathryn=s intent as expressed in the agreements. 








In sum,
we hold that any survivorship agreements governing the Dain Rauscher and Kemper
accounts did not apply to securities after they were issued out of the accounts
in certificate form.  Therefore, these securities did not pass to Thomas by
right of survivorship upon Kathryn=s death.  Accordingly, the trial
court properly granted Beatty=s motion for summary judgment and denied Holmes=s motion for summary judgment with
respect to the securities in certificate form.

VII.  Security Issued Out of The First Southwest
Account

Finally,
we address one security issued out of the First Southwest account in
certificate form.[39]  Holmes=s brief is unclear on whether he is
appealing the trial court=s ruling with respect to this security.  At the outset of his
brief, he states this appeal involves the Raymond James and First Southwest
accounts and securities issued out of the Dain Rauscher and Kemper accounts. 
However, in the body of his brief, he argues the trial court erroneously held
the First Southwest account and a security issued from that account did
not pass by right of survivorship to Holmes.

Holmes
again contends that Kathryn and Thomas held this security with a right of
survivorship because the First Southwest survivorship agreement continued to
govern the security after it was distributed in certificate form.  However, the
trial court ruled that the First Southwest account was not owned with a right
of survivorship, and we have upheld that ruling.  Therefore, we may summarily
reject Holmes=s argument that the security issued out of this account in certificate
form was owned with a right of survivorship pursuant to the account agreement. 
Accordingly, to the extent Holmes appeals the trial court=s ruling with respect to this
security, the trial court properly granted Beatty=s motion for summary judgment and
denied Holmes=s motion for summary judgment.

VIII.  Conclusion








We
sustain, in part, and overrule, in part, Holmes=s first, second, and fourth issues,
and we need not address his third issue.  We reverse the AAmended Order on Douglas G. Beatty=s Amended Motion for Partial Summary
Judgment and Harry Holmes II=s Motion for Partial Summary Judgment and Supplemental Motion
for Partial Summary Judgment,@ signed March 18, 2005 with respect to the Raymond James
account and render judgment that the securities held in Raymond James &
Associates, Inc. Account Number 17239796 at Kathryn V. Holmes=s date of death, which includes the
dividends, interest, and proceeds therefrom since the date of death of Kathryn
v. Holmes, are the property of Harry Holmes, II, Independent Executor of the
Estate of Thomas J. Holmes, Sr., Deceased, as assets of the Estate, and the
Estate of Kathryn V. Holmes has no interest therein.  We affirm the remainder
of this order.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
August 14, 2007.

Panel consists of Justices Hudson,
Fowler, and Seymore.

 

 









[1] Holmes agrees the assets were community property only
for purposes of the cross-motions for summary judgment and this appeal.  He has
reserved his right to claim the assets were Thomas=s separate property or to assert a claim for
contribution if it is determined some or all of the property did not pass to
Thomas by right of survivorship when Kathryn died.





[2]  Holmes had previously filed a different motion for
partial summary judgment.  On March 11, 2003, the trial court signed a ASummary Judgment@
granting Holmes=s motion in part and ordering that certain accounts
and securities passed to Thomas by right of survivorship at Kathryn=s death.  The trial court severed that order from the
remainder of the case.  Beatty challenges that order in the companion appeal. 
On March 11, 2003, the trial court also signed a separate AOrder on Partial Summary Judgment@ denying Holmes=s
motion in part as to other accounts and securities.  Subsequently, Beatty and
Holmes each filed the motions for summary judgment that are the subject of this
appeal to address these other accounts and securities, as well as additional
assets.





[3]  In the order that is the subject of the companion
appeal, the trial court granted summary judgment in favor of Holmes with
respect to the Dain Rauscher and Kemper accounts, thereby ruling they passed to
Thomas by right of survivorship at Kathryn=s
death.  This appeal involves only the trial court=s ruling that certain securities which had been issued out of the Dain
Rauscher and Kemper accounts in certificate form did not pass to Thomas by
right of survivorship at Kathryn=s
death.





[4]  The trial court also granted summary judgment in
Beatty=s favor as to the following assets, but Holmes does
not appeal this ruling: (1) several additional securities held in certificate
form; (2) a Principal/Eppler, Guerin & Turner, Inc. account; and (3) a
Lovett, Underwood, Neuhaus, & Webb, Inc. account.  Further, the trial court
denied Beatty=s motion for summary judgment and granted summary
judgment in Holmes=s favor as to a few other securities held in
certificate form.  Beatty does not appeal that ruling.





[5]  In his first stated issue, Holmes generally contends
the trial court erred by granting Beatty=s
motion for summary judgment.  In his second stated issue, Holmes generally
contends the trial court erred by denying Holmes=s motion for summary judgment.  In his fourth issue, Holmes urges
application of specific provisions of the Texas Probate Code governing a right
of survivorship in community property.  When read together, the essence of
these issues is that the brokerage accounts and securities in certificate form
were owned with a right of survivorship pursuant to the applicable Probate Code
provisions.





[6]  We are presented with overlapping, as well as
unique, issues concerning the First Southwest and Raymond James accounts, and
the agreements differ materially, so we will discuss the accounts separately. 





[7]  Initially, we must note that, in his brief, Holmes
states Kathryn and Thomas chose to create accounts with a right of survivorship
Awhen provided definition of their ownership rights as
being those of joint tenants with rights of survivorship, not tenants in
common.@  To the contrary, Holmes cites no summary judgment
evidence showing the spouses were provided the definition of AJT TEN@ when they
opened the First Southwest accountCwhether
in any document comprising the account agreement or otherwise.  Instead, Holmes
cites evidence allegedly establishing  the common meaning of this acronym in
the securities industry and by First Southwest.





[8]  Beatty further contends that, even if extrinsic
evidence can be considered in general,  the purported meaning of AJT TEN@ is not binding
on Kathryn and Thomas because they were not involved in the securities industry
and there is no evidence they knew the meaning of the acronym; and the
extrinsic evidence offered in this case is not probative because the trial
court sustained, or should have sustained, Beatty=s objections to particular items of evidence. Because we conclude
extrinsic evidence may not be considered in general, we need not address these
contentions.





[9]  For instance, the agreement includes a provision
that, although difficult to read, apparently mandates arbitration of  Aany and all controversies, disputes or claims between
the undersigned [Kathryn and Thomas] and you [First Southwest] . . .@





[10]  We note that, with respect to the First Southwest
account, Holmes does not seem to suggest AJT
TEN@ was alone sufficient to create a right of
survivorship because he relies heavily on his evidence regarding the
commonly-understood meaning of this acronym.  Nonetheless, we will discuss
Beatty=s contention regarding the language necessary to
create a right of survivorship under section 452 because he makes the same
argument concerning the Raymond James account.  In addition, it is helpful to
address the requirements for creating a right of survivorship under 452 at this
point to set forth the parameters within which we evaluate the property at
issue.





[11]  The Legislature subsequently enacted section 439A,
prescribing form language financial institutions may use to establish various
types of accounts, including the following: AMULTIPLE-PARTY
ACCOUNT WITH RIGHT OF SURVIVORSHIP. . . .  On the death of a party, the party=s ownership of the account passes to the surviving
parties.  Enter the names of the parties: ____.@  See Tex. Prob. Code
Ann. ' 439A(a), (b).  Section 439A has been construed Aas a supplement to section 439(a), adding alternative
acceptable forms of survivorship language.@  See
Allen v. Wachtendorf, 962 S.W.2d 279, 283 (Tex. App.CCorpus Christi 1998, pet. denied). 





[12]  In Ivey, we held that the signature cards for
two accounts were insufficient to create a right of survivorship under section
439(a) where boxes were checked for  AJoint
Accounts - - with Survivorship,@ but the
agreements lacked any other designating language.   See 857
S.W.2d at 750B51.  However, we also held the signature cards for
several other accounts satisfied section 439(a) where boxes were checked to
designate the type of account and further provisions next to the designations
explained the survivorship rights.  See id.; see also
In re Estate of Graffagnino, No. 09‑00‑434 CV, 2002 WL
31126901, *3 (Tex. App.CBeaumont Sept. 26, 2002, pet. denied) (not designated
for publication) (citing Ivey when holding that, inter alia, account
signature card noting AJT/TNTS with rights of survivorship@ was insufficient under section 439(a) absent
explanation of right of survivorship).





[13]  Although we have found no cases directly addressing
the requisite language to create a right of survivorship under section 452, we
note the author of, at least, one practice guide has interpreted section 452 in
the same manner:  AThe agreement needs to contain language sufficient to
demonstrate an intent to imbue the property with the survivorship feature.@  Gerry W. Beyer, 10 Texas Law of Wills, ' 60.3, p. 503 (Texas Practice Series, West 2002).  





[14]  To prove that AJT
TEN@ is commonly understood in the securities industry to
mean Ajoint tenancy with right of survivorship,@ Holmes offered: the affidavit of Eric Anderson, an
attorney who served as counsel for the sale of some of Kathryn=s and Thomas=s
bonds; the Securities Transfer Association Rule Book (2001); and the affidavit
of an expert, Warren Edmundson, containing his opinions based on his
experience, interviews with brokers, review of documents from the brokerage firms
at issue, Eric Anderson=s affidavit, the Securities Transfer Association Rule
Book (2001), The Securities Handbook - Comprehensive Reference Guide for the
Securities Industry (1986), and Barron=s
Dictionary of Finance and Investment Terms (1998).





[15]  To prove First Southwest uses AJT TEN@ to mean Ajoint tenancy with right of survivorship,@ Holmes cites a letter from Scott Fertig, a
vice-president of First Southwest, to Holmes, written after Kathryn=s and Thomas=s
deaths.  Fertig explains that First Southwest Company follows standard industry
language, per The Securities HandbookCComprehensive
Guide for the Securities Industry, on its new account designations including AJOINT TENANTS WITH RIGHT OF SURVIVORSHIP - JTTEN.@





[16]  We note that, before 1987, it was unconstitutional
for spouses to own community property with a right of survivorship.  See
Haas v. Voight, 940 S.W.2d 198, 201 (Tex. App.CSan Antonio 1996, writ denied) (explaining Along and troubled history in Texas@ of joint accounts with rights of survivorship
involving community property).  Instead, to create a right of survivorship in
community property by agreement, the property had to first be partitioned into
separate property.  See id.  In response, article XVI, section 15 of the
Texas Constitution was amended in 1987 to expressly provide that Aspouses may agree in writing that all or part of their
community property becomes the property of the surviving spouse on the death of
a spouse.@ See id. (quoting Tex. Const. art. XVI, '
15).  Thereafter, in 1989, the Legislature amended section 46 of the Probate
Code, which generally
addresses joint tenancies, to provide
that A[a]greements between spouses regarding rights of
survivorship in community property are governed by Part 3 . . . .@  See id. at 201B02 (quoting Tex. Prob. Code Ann.
' 46(b)).  Thus, Part 3 came into being.  See id.
at 202 (citing Tex. Prob. Code Ann.
'' 451‑62).  Therefore, the history behind
enactment of Part 3 demonstrates that a right of survivorship in community
property is the exceptionCnot the rule.  And, spouses must comply with the
requirements of Part 3 before community property may pass by right of
survivorship outside the testamentary provisions of the Probate Code.





[17]  See, e.g., In re Estate of Dellinger,
224 S.W.3d 434, 438 (Tex. App.CDallas 2007, no
pet.); In re Estate of Wilson, 213 S.W.3d 491, 493B94 (Tex. App.CTyler
2006, pet. filed); In re Dillard, 98 S.W.3d 386, 396, 397 n.5 (Tex. App.CAmarillo 2003, pet. denied); Allen, 962 S.W.2d
at 282; Evans v. First Nat=l Bank of Bellville, 946
S.W.2d 367, 374 (Tex. App.CHouston [14th
Dist.] 1997, writ denied); Banks v. Browning, 873 S.W.2d 763, 764B65 (Tex. App.CFort
Worth 1994, writ denied); McNeme v. Estate of Hart, 860 S.W.2d 536, 538
(Tex. App.CEl Paso 1993, no writ); Shaw v. Shaw, 835
S.W.2d 232, 234B35 (Tex. App.CWaco
1992, writ denied); Kitchen v. Sawyer, 814 S.W.2d 798, 801 (Tex. App.CDallas 1991, writ denied); but see A.G.
Edwards & Sons, Inc. v. Beyer, 170 S.W.3d 684, 690B94 (Tex. App.CEl
Paso 2005, pet. granted) (permitting extrinsic evidence of joint account
holders= intent to create right of survivorship for limited
purpose of determining whether broker was liable to survivor for failing to set
up account as requested after written agreement went missing).





[18]  Holmes contends section 439 applies only to cash
accountsCnot brokerage accountsCwhile section 452 applies to all types of community property.  Because
we are applying section 452, we need not address this contention. 
Nevertheless, even if section 439 applies only to cash accounts, we find no
reason cases considering admissibility of extrinsic evidence under section
439(a) cannot provide guidance when addressing the same issue with respect to
community property in general under section 452.  We also note section 439(a)
provides that  AA survivorship agreement will not be inferred from the
mere fact that the account is a joint account,@ whereas section 452 contains no similar statement relative to ownership
of community property.  See Tex.
Prob. Code Ann. '' 439, 452.  However, the Legislature included the
quoted phrase to effectively revoke previous decisions from many Texas courts
recognizing a rebuttable presumption of a right of survivorship in a joint
account by requiring a written agreement complying with section 439.  See
Stauffer v. Henderson, 746 S.W.2d 533, 534B36 (Tex. App.CAmarillo 1988), aff=d, 801
S.W.2d 858 (Tex. 1990).  Accordingly, this distinction between section 439(a)
and section 452 does not affect our conclusion that cases interpreting section
439(a) are analogous.





[19]  As we have discussed, we reject Beatty=s contention that the spouses were required to execute
a separate survivorship agreement between themselves.  Rather, their
survivorship agreement could be included within their larger account agreement
with the brokerage firm.  However, that conclusion does not mean that every
agreement between the spouses and the brokerage firms also governed the
relationship between the spouses.





[20]  In Evans, we referenced Shaw as a Abut see@
citation, thus indicating the Shaw court held the opposite of Evans. 
See Evans, 946 S.W.2d at 375.  However, both courts concluded
extrinsic evidence is inadmissible to manifest intent to create a right
of survivorship even when the agreement is ambiguous as to that intent.  See
id.; Shaw, 835 S.W.2d at 234B35.





[21]  See also Philip M. Green, Note, Extrinsic
Evidence Is Not Admissible to Determine Parties= Intent Regarding Right of Survivorship on Joint Bank
Accounts:  Stauffer v. Henderson, 801 S.W.2d 858 (Tex. 1990), 22 Tex. Tech
L. Rev. 1237, 1251 (1991) (criticizing Stauffer, but interpreting
decision as holding that extrinsic evidence is inadmissible even when agreement
is ambiguous as to the parties= intent to
create right of survivorship under section 439(a)).





[22]  We must note that, after Stauffer, the
Legislature added section 439A to the Probate Code, allowing a financial
institution to give a Acustomer . . . adequate disclosure of the ownership
rights . . . in a universal account form with options listed for selection and
additional disclosures provided in the account agreement, or in any other
manner which adequately discloses the information provided in this section.@  See Tex.
Prob. Code Ann. '' 439A(c),
(d).  Therefore, section 439A seems to have slightly modified Stauffer
by suggesting a court may look to all disclosures provided by the financial institution
to the depositors and all documents comprising their account agreement when
determining intent to create a right of survivorship.  See id.  However,
section 439A apparently did not alter the rule precluding consideration of
extrinsic evidence in general when determining intent to create a right of
survivorship.  See In re Estate of Dellinger, 224 S.W.3d at 438B440  (citing Stauffer rule, but also
recognizing that, pursuant to section 439A, language establishing right of
survivorship may be contained in document incorporated into instrument signed
by decedent because agreement must be construed as a whole, when determining
whether intent was adequately expressed); Allen, 962 S.W.2d at 282B84 (construed same).  Moreover, nothing in section
439A suggests a court may consider extrinsic evidence regarding the parties= understanding of terms in their agreement, absent
proof the meaning was provided to them when they opened their account.  See
Tex. Prob. Code ann. ' 439A.





[23]  In fact, Beatty argues that, even if trade usage
evidence were generally permitted, Kathryn and Thomas were not bound by the
industry meaning of AJT TEN.@
Beatty asserts they were not affiliated with the securities industry and there
is no evidence they knew the meaning of the acronym.  Because we agree that
consideration of trade-usage evidence is not permitted, we do not reach Beatty=s contention.  However, his contention illustrates the
uncertainties that would arise if trade-usage evidence were permitted.  In
particular, Holmes suggests Kathryn and Thomas were bound by the industry meaning
of AJT TEN@ based on their
extensive investing experience.  Arguably, Thomas was engaged in the securities
trade because evidence shows his occupation was Ainvestments.@  However, Kathryn was a housewife although she had an
extensive history of investing.  Assuming, without deciding, that Kathryn=s investing experience sufficiently raises a fact
issue on whether she knew or should have known the meaning of industry
acronyms, a fact-finder would potentially decide intent to create a right of
survivorship.  We conclude the Legislature did not contemplate that intent to create
a right of survivorship be determined based on a fact-finder=s decision regarding what a decedent knew or should
have known.





[24]  To establish that AJTWROS@ is commonly recognized in the securities industry to
mean Ajoint tenancy with right of survivorship,@ Holmes again cites the affidavit of his expert,
Warren Edmundson, and the materials relied on by Edmundson.





[25] To demonstrate Raymond James recognized AJT WROS@ to
mean Ajoint tenancy with right of survivorship,@ Holmes cites two documents he obtained from Raymond
James by deposition on written questions after this suit was filed.  One
single-paged document entitled ANew
Accounts/Special Account Types@ lists the
meanings of various abbreviations and includes an entry for AJT WROS,@
explaining, in part: that AThe
distinguishing feature of joint tenancy is its survivorship feature.  Upon the
death of each tenant, the property immediately passes to the surviving joint
tenants in equal shares.  This means the property is not controlled by the
terms of a will and will be excluded from the probate estate.@  The other single-paged, untitled document also
outlines the meaning of various abbreviations and explains that AJT/WROS@
equals Ajoint tenants with right of survivorship.@

 

We note that the deposition on written questions
included a numbered list of various requested items.  Some requested items were
documents generally defining or explaining AJT(WROS)@ and AJTWROS.@  One requested item was all brochures that were or
should have been provided to Kathryn and Thomas when they opened their
account.  The portions of Raymond James=s response
included in the summary judgment record did not indicate that the
above-described documents defining AJTWROS@ and AJT/WROS@ were responsive to any certain numbered requests. 
Therefore, the evidence did not show that these documents were provided to
Kathryn and Thomas when they opened the account.

Holmes also cites an affidavit from an
officer of Raymond James, reciting the same definition for AJoint (WROS)@
that is included on the ANew Accounts/Special Account Types.@ This affidavit was attached to Holmes=s motion to reconsider filed after the trial
court signed its initial order granting Beatty=s motion for summary judgment, but before the trial court signed its
amended order.  





[26]  Beatty again argues Holmes=s proffered evidence is not probative because there is
no indication Kathryn and Thomas understood AJTWROS@ to mean Ajoint
tenancy with right of survivorship,@
and the trial court sustained or should have sustained Beatty=s objection to particular evidence.  Because we find
the agreement sufficient to convey intent to create a right of survivorship, we
need not consider these arguments.





[27]  Beatty asserts that the Texas cases cited by Holmes
did not define AJTWROS@ to mean Ajoint tenancy with a right of survivorship.@ Holmes cites Evans, in which we used AJTWROS@ as an acronym
for joint tenancy with right of survivorship for convenience when discussing an
account governed by section 439(a).  See generally  946 S.W.2d 367.  A
sister court has referred to an account title containing the abbreviation as a
joint tenancy with right of survivorship; however, whether the acronym was
sufficient to create a right of survivorship was not the issue in that case.  See
A.G. Edwards, 170 S.W.3d at 687B96. 
Holmes also cites cases from sister state courts actually recognizing AJTWROS@ as the common
acronym for Ajoint tenancy with rights of survivorship.@  See In re Estate of Baker, 760 So.2d 759, 762
(Miss. 2000); In re Marriage of Tullier, 989 S.W.2d 607, 609 n.2 (Mo.
Ct. App. 1999); In re Estate of Hayes, 941 S.W.2d 630, 633 (Mo. Ct. App.
1997).  We need not decide whether use of the initials AJT WROS@ or
AWROS@ would alone be
sufficient to create a right of survivorship because the designation AJoint (WROS),@
when read in conjunction with the entire Raymond James agreement, sufficiently
conveyed Kathryn=s and Thomas=s
intent to create a right of survivorship.





[28]  We will discuss the fax in more detail when we
address securities in certificate form because Holmes again cites the fax
relative to the individual securities.





[29]  In light of this conclusion, we need not consider
Holmes=s third issue, urging the account was owned with right
of survivorship under Florida law.





[30]  These securities are items 1-7 on the list of
securities recited in the portion of the underlying order granting summary
judgment in favor of Beatty.





[31]  This security is item 8 on the list of securities
recited in the portion of the underlying order granting summary judgment in
favor of Beatty. 





[32]  The owners are shown as AThomas J. Holmes & Kathryn V. Holmes JT TEN@ on the face of all these certificates.  Although the
writing on the back of these certificates is quite difficult to read, it is
apparently undisputed that the initials AJT
TEN@ are not defined on the back of the certificates. 
Further, the certificates are not signed because owners do not sign stocks or
bonds until they are ready to sell or redeem them as signatures would render
them negotiable by anyone with possession. 





[33]  Both parties raised another issue in their motions
for summary judgment: whether the certificates alone were sufficient to create
a right of survivorship, despite the absence of Kathryn=s and Thomas=s
signatures, pursuant to a different provision contained in Probate Code Chapter
XICsection 450.  See Tex. Prob. Code Ann. '
450.  However, on appeal, Holmes does not reurge his section 450 argument,
although application of section 450 remains a disputed issue in the companion
appeal.  In this appeal, Holmes asserts only that the securities in certificate
form were held with a right of survivorship under section 452 because the
account agreements continued to govern their character even after they were
issued out of the accounts.  Accordingly, we will address this issue only.





[34]  Beatty also argues that, pursuant to Probate Code
section 455, there was a Arevocation@ of
any survivorship agreements governing the securities when they were issued out
of the accounts.  Section 455, which prescribes the methods for revocation of a
survivorship agreement governing community property, provides in pertinent
part: AThe agreement may be revoked with respect to specific
property subject to the agreement by the disposition of such property by one or
both of the spouses if such disposition is not inconsistent with specific terms
of the agreement and applicable law.@  Tex. Prob. Code Ann. '
455.  Citing two dictionary definitions, Beatty contends there was a Adisposition@
when the certificates were issued because the brokerage firms transferred care
or possession of the securities to Kathryn and Thomas.  See Merriam-Webster=s
Collegiate Dictionary 335 (10th ed. 1993)
(defining Adisposition@ as
meaning (1) transfer to the care or possession of another; or (2) the power of
such transferral); Black=s Law
Dictionary 197 (6th ed. 1990) (defining Adisposition@ to
mean (1) the act of transferring something to another=s care or possession, or (2) the parting with,
alienation of, or giving up of property).  However, section 455 clearly
contemplates revocation of a survivorship agreement if there is a disposition
of the property Aby one or both spouses.@  See Tex. Prob. Code Ann. ' 455 (emphasis added).  Kathryn and Thomas never
transferred care or possession of the securities to another; rather the
securities were transferred to Kathryn and Thomas in certificate form. 
Therefore, Beatty=s revocation argument is inapplicable to this
situation.  Regardless, Beatty need not prove revocation of any survivorship
agreements governing the securities if no such agreements existed in the first
place.  See id. (discussing revocation with respect to Aspecific property subject to the agreement@). 

 





[35] As explained more fully in the companion opinion, we
have held that this paragraph was insufficient to create a right of
survivorship because it is not clear from the agreement that Kathryn and Thomas
actually chose this option.





[36]  As previously discussed, we have rejected Beatty=s argument that Kathryn and Thomas could not include
their survivorship agreements within larger brokerage firm account agreements;
they were not required to execute separate survivorship agreements between
themselves to govern the accounts.  However, by including their survivorship
agreements within larger brokerage firm account agreements, Kathryn and Thomas
limited the survivorship agreements to governing only securities in the
accountsCand not securities removed from the accounts.





[37]  Holmes also cites substantially similar provisions
in the Dain Rauscher and Kemper account agreements as purportedly establishing
that distributions of securities were transactions governed by the account
agreements.  In essence, the provisions allowed either spouse to authorize
delivery of securities and other transactions.  When read in context, the
purpose of the provisions was to protect the brokerage firms in the event they
acted upon the instructions of only one spouse.  These provisions did not
specifically establish that distributions of certificates were transactions
governed by the account agreements.  Regardless we agree that distributions of
securities were transactions governed by the account agreements





[38]  Specifically, Beatty averred as follows:  when he
sent the fax, he had not consulted an attorney, he did not understand the legal
requirements for creating a right of survivorship, he had not reviewed any of
the account agreements, and he relied on information received from Holmes and
his staff; he subsequently learned his statements regarding the manner in which
securities were to be distributed, the abbreviations, and the Raymond James
account were erroneous; and as soon as he realized the statements were
erroneous, he attempted to retract them.  Attached to Beatty=s affidavit was his letter to Raymond James retracting
and countermanding his earlier instructions regarding distribution of one
certificate.  





[39]  This security is item 10 on the list of securities
recited in the portion of the underlying order granting summary judgment in
favor of Beatty.